OPINION *Page 2 
{¶ 1} Defendant-appellant Richard A. Vance appeals from his conviction and sentence in the Ashland Municipal Court on one count of domestic violence, a misdemeanor of the first degree, in violation of R.C. 2919.25(A). Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On January 12, 2007 around 6:45 p.m. appellant returned home from work. Present at the home were his wife Rhonda and her three sons, Tristen, Taylor, and Tyler. Appellant became upset because the window was open and the light was left on upstairs in the room of 7-year old Taylor Vance. Appellant yelled at Taylor because he was wasting electricity. Taylor became scared and ran upstairs.
 {¶ 3} Appellant also complained that the dishes were not done and the dishwasher had not been unloaded. According to Rhonda Vance appellant called her the dirtiest person he had ever known. Rhonda Vance testified she has worked as a certified Hospice Palliative Nursing Assistant for about seven (7) years.
 {¶ 4} After a verbal argument between appellant and his wife, Rhonda told the boys to get in the truck because she was going to call her mother and go to stay at her house. Rhonda Vance testified when she went outside she did not have her cigarettes. Appellant followed his wife out to the garage. She walked behind appellant to go back up the steps into the house. While on the landing, appellant turned, faced the victim and prevented her from entering the house. Appellant stepped on Rhonda's feet hard enough so that she could not pull her feet away. Appellant was also pushing her. In response and in an attempt to keep from falling off the porch on to the concrete floor of *Page 3 
the garage the victim slapped appellant. Rhonda Vance testified that appellant then pushed her off the landing and she flew across the garage on to the concrete floor. She further testified that she "hit pretty hard and it really hurt, really bad . . . the corner had went back into my shoulder . . . I didn't get up for a while . . . I couldn't get off the floor." Photographs depicting her injuries were admitted into evidence.
 {¶ 5} Tyler Robertson, Rhonda Vance's son, testified that when appellant came home, he was complaining about the lights that were on upstairs and the window being open. He testified appellant was also complaining about the unwashed dishes. An argument ensued and both appellant and Rhonda went outside. At that point, Tyler went to the bathroom. When he came out of the bathroom, he saw his mother and appellant in the garage. He saw his mother on the ground and helped her up. An argument ensued between Tyler and appellant. Rhonda attempted to separate appellant and Tyler. During the struggle, appellant grabbed the cell phone from his wife and threw it against the wall. After Rhonda and her sons got into the truck, appellant got in the back seat and refused to leave. He stated that the truck belonged to him and the family could not take it. Rhonda and her sons got out of the appellant's truck and got in Tyler's car and left.
 {¶ 6} Deputy Aaron Kline was the arresting and investigating officer for the State. Deputy Kline testified he listened to what Rhonda had to say and took her report at the station. He then left to speak to appellant at his home. Appellant told Deputy Kline there was an argument and Rhonda Vance hit him. While appellant was being hit, she lost her footing and fell. *Page 4 
 {¶ 7} Deputy Kline testified the only persons he talked to were appellant and Rhonda Vance. He took no pictures of the house and did not go into the house. He did observe the garage area. Deputy Kline could not recall whether appellant asked him to take pictures of his injuries. On redirect examination by the prosecutor, Deputy Kline was allowed, over objection, to express his opinion concerning appellant's guilt. He also testified that appellant had requested an attorney after being given his Miranda warnings.
 {¶ 8} Appellant presented two witnesses on his behalf. Attorney Deborah Mack testified that on January 12, 2007 she visited appellant at the jail. Ms. Mack testified that appellant told her that Rhonda Vance got into his face and she pushed him. At that point, he tried to defend himself while she was striking him on the side of his face. Ms. Mack took pictures of appellant's injuries. Ms. Mack testified that the photographs were taken between 12:30 and 3:30 a.m.
 {¶ 9} Martin Yant, a licensed private investigator, testified that he took photographs of the home and the outside area where the events took place. He attempted to get into the home to take photographs but Rhonda Vance and some other unidentified people refused to allow him admittance to the home.
 {¶ 10} At the conclusion of the trial, the judge instructed the jury concerning self-defense over the State's objection. During jury deliberations, the jury had a question concerning self-defense. The court gave further instructions. Thereafter, the jury returned a verdict of guilty.
 {¶ 11} On July 2, 2007, the trial court sentenced appellant to serve ninety (90) days in the Ashland County jail, pay a fine $250.00 and court costs. The court *Page 5 
suspended sixty (60) of the ninety (90) days, ordering defendant to serve thirty (30) days.
 {¶ 12} Appellant timely appealed raising the following eight (8) Assignments of Error:
 {¶ 13} "I. DEFENDANT WAS DENIED DUE PROCESS OF LAW AND A FAIR TRIAL WHEN THE ARRESTING OFFICER WAS PERMITTED TO GIVE HIS OPINION OF DEFENDANT'S GUILT.
 {¶ 14} "II. DEFENDANT WAS DENIED A FAIR TRIAL AND DUE PROCESS OF LAW WHEN THE COURT PERMITTED EVIDENCE OF DEFENDANT EXERCISING HIS RIGHTS AND [sic] SUBSTANTIVE EVIDENCE OF GUILT.
 {¶ 15} "III. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HE WAS CONVICTED ON A COMPLAINT WHICH FAILED TO ALLEGE ALL OF THE ESSENTIAL ELEMENTS OF THE OFFENSE.
 {¶ 16} "IV. DEFENDANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO ACCESS TO EVIDENCE.
 {¶ 17} "V. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT GAVE A CONFUSING AND CONFLICTING INSTRUCTION CONCERNING SELF-DEFENSE.
 {¶ 18} "VI. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT OVERRULED HIS MOTION FOR JUDGMENT OF ACQUITTAL AS THE STATE FAILED TO PROVE DEFENDANT KNOWINGLY CAUSED OR ATTEMPTED TO CAUSE PHYSICAL HARM TO RHONDA VANCE. *Page 6 
 {¶ 19} "VII. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT FAILED TO ENTER A JUDGMENT OF ACQUITTAL AS DEFENDANT'S ACTIONS WERE IN SELF-DEFENSE.
 {¶ 20} "VIII. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT IMPOSED A JAIL SENTENCE BASED ON UNCHARGED CONDUCT AND JUDICIAL FINDINGS."
 I. {¶ 21} In his first assignment of error, appellant maintains that the trial court erred when it allowed, over objection, Deputy Kline to give his opinion of appellant's guilt.
 {¶ 22} Appellant objects to the following exchange that occurred during the redirect examination of Deputy Kline:
 {¶ 23} "Q. No. I mean, I mean what you gathered, you wish you would have been able to do some things differently. But would that change your opinion about Defendants guilt and would it have changed your mind about arresting him?
 {¶ 24} "A. No.
 {¶ 25} "Q. And why not?
 {¶ 26} "MS. BLAZEF: I'm going to object to this line or questioning —
 {¶ 27} "A. Because —
 {¶ 28} "THE COURT: Overruled.
 {¶ 29} "By Mr. Montague:
 {¶ 30} "Q. Go ahead.
 {¶ 31} "A. — in my opinion he violated what domestic violence, the law of domestic violence." (T. at 126-27). *Page 7 
 {¶ 32} Opinion testimony by police as to the guilt or innocence of a criminal defendant has been held inadmissible as a violation of due process. In Cooper v. Sowders (6th Cir. 1988), 837 F.2d 284, the Sixth Circuit Court of Appeals held inadmissible as a violation of due process, a police officer's testimony that all evidence pointed to the defendant as the perpetrator of the crime. Likewise, in Dubria v.Smith (9th Cir. 1999), 197 F.3d 390, the court held inadmissible police officer statements that the defendant was guilty and that no one would believe his story. See, also State v. Davis, 116 Ohio St.3d 404,2008-Ohio-2 at ¶ 122, 880 N.E.2d 31.
 {¶ 33} In order to constitute a violation of due process, however, the error must have been so prejudicial as to deprive a defendant of a fundamentally fair trial. Cooper v. Sowders, supra; see also Walker v.Engle (6th Cir. 1983), 703 F.2d 959, 962, cert. denied, 464 U.S. 962
(1983). In State v. Davis, 116 Ohio St.3d 404, 2008-Ohio-2,880 N.E.2d 31, the Ohio Supreme Court applied the "overwhelming evidence test" in finding that the erroneous admission of a police officer's testimony that the defendant "was being very deceptive" to them and his opinion that the defendant was being untruthful did not result in plain error. Id at ¶ 123.
 {¶ 34} Crim. R. 52(A), which governs the criminal appeal of a non-forfeited error, provides that "[a]ny error * * * which does notaffect substantial rights shall be disregarded."(Emphasis added.) Thus, Crim. R. 52(A) sets forth two requirements that must be satisfied before a reviewing court may correct an alleged error. First, the reviewing court must determine whether there was an "error"-i.e., a "[deviation from a legal rule." United States v. Olano (1993), 507 U.S. 725,732-733, 113 S.Ct. 1770, 123 L.Ed.2d 508. Second, the reviewing court must engage in a specific analysis of the trial *Page 8 
court record-a so-called "harmless error" inquiry-to determine whether the error "affect[ed] substantial rights" of the criminal defendant. InU.S. v. Dominguez Benitez (2004), 542 U.S. 74, 124 S.Ct. 2333,159 L.Ed.2d 157, the Court defined the prejudice prong of the plain error analysis. "It is only for certain structural errors undermining the fairness of a criminal proceeding as a whole that even preserved error requires reversal without regard to the mistake's effect on the proceeding. See Arizona v. Fulminante, 499 U.S. 279, 309-310 (1991) (giving examples). "Otherwise, relief for error is tied in some way to prejudicial effect, and the standard phrased as `error that affects substantial rights,' used in Rule 52, has previously been taken to mean error with a prejudicial effect on the outcome of a judicial proceeding. See Kotteakos v. United States, 328 U.S. 750 (1946). To affect "substantial rights," see 28 U.S.C. § 2111, an error must have "substantial and injurious effect or influence in determining the . . . verdict." Kotteakos, supra, at 776."124 S.Ct. at 2339. See, also,State v. Barnes (2002), 94 Ohio St.3d 21, 759 N.E.2d 1240. See, also,State v. Fisher, 99 Ohio St.3d 127, 129, 2003-Ohio-2761 at ¶ 7,789 N.E.2d 222, 224-225. Thus, a so-called "[t]rial error" is "error which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." Fulminante, 499 U.S. at 307-308,111 S.Ct. 1246, 113 L.Ed.2d 302; State v. Ahmed, Stark App. No. 2007-CA-00049,2008-Ohio-389 at ¶ 23-24.
 {¶ 35} "When a claim of harmless error is raised, the appellate court must read the record and decide the probable impact of the error on the minds of the average *Page 9 
juror." State v. Young (1983), 5 Ohio St.3d 221, 226, 450 N.E.2d 1143
(citing Harrington v. California (1969), 395 U.S. 250, 254,89 S.Ct. 1726, 23 L.Ed.2d 284).
 {¶ 36} We find Deputy Kline's isolated comment did not result in prejudicial error. In context, the comment explains that, even if he had conducted the investigation in the manner suggested by the defense, he still would have arrested appellant for domestic violence. The Deputy had testified without objection from the appellant that he informed appellant during his initial investigation that he, the Deputy, believed a domestic violence offense had taken place and that he, the appellant, "was the defendant in it." (T. at 112).
 {¶ 37} Having reviewed the entire record and disregarded this inadmissible opinion testimony, we conclude that there was other independent, substantial evidence of appellant's guilt sufficient to support the jury's verdict. This error was not prejudicial, but rather harmless beyond a reasonable doubt. State v. Berry (June 23, 1988), Franklin App. No. 87AP-924.
 {¶ 38} Appellant's first assignment of error is denied.
 II. {¶ 39} In his second assignment of error, appellant argues that Deputy Kline was permitted to testify about appellant's decision to exercise his right to remain silent following his arrest and that he wished to consult with his attorney.
 {¶ 40} At the outset, we note that appellant did not object at trial to any of the statements he now claims were admitted in error.
 {¶ 41} In Doyle v. Ohio (1976), 426 U.S. 610, 96 S.Ct. 2240,49 L.Ed.2d 91, the United States Supreme Court held that the state, after giving a defendant Miranda *Page 10 
warnings, cannot use the defendant's post-arrest silence as a means to impeach the defendant if he or she later decides to testify at trial. Id. at 618,426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91. Doyle involved two defendants who were given Miranda warnings and then remained silent about their involvement in the crime. Each testified at trial that he had been framed. On cross-examination, the prosecutor attempted to impeach the defendants by asking them why they had not told their version of the story to the police. The Court in Doyle held that:
 {¶ 42} "[W]hile it is true that the Miranda warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." Id.
 {¶ 43} However, the United States Supreme Court later qualified its decision:
 {¶ 44} "Where the prosecutor on his own initiative asks the jury to draw an adverse inference from a defendant's silence, Griffin [v.California (1965), 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106] holds that the privilege against compulsory self-incrimination is violated. But where as in this case the prosecutor's reference to the defendant's opportunity to testify is a fair response to a claim made by defendant or his counsel, we think there is no violation of the privilege."United States v. Robinson (1988), 485 U.S. 25. 32, 108 S.Ct. 864, 869.
 {¶ 45} We also note that the case at bar is not a case in which the prosecution, on its own initiative, commented on appellant's silence. Rather, appellant invited the questioning on cross-examination of Deputy Kline by referring to the fact that the *Page 11 
Deputy did not obtain a written statement from the appellant during his investigation of the case. (T. at 124; 131). Further, the Deputy testified that appellant did orally tell him his side of the story. (T. at 110-113; 120; 124; 131). Appellant's counsel argued in both her opening and her closing statements that the State did not try to obtain a written statement from the appellant. (T. at 17; 161-162). Appellant did not object when the State answered this contention in its closing argument. (T. at 165-166). Finally, we would note that the attorney appellant spoke to at the jail after his arrest testified on his behalf during the jury trial. (T. at 134-140).
 {¶ 46} "Under such circumstances, courts have found no Doyle
violation. See State v. Lee (Dec. 31, 1997), Trumbull App. No. 95-T-5371(Doyle inapplicable where appellant's attorney facilitated the presentation of the testimony referring to appellant's silence after being given Miranda rights; "admission of such testimony is not reversible error, since it was invited by the questioning of appellant's attorney"); State v. Eason, Belmont App. No. 02 BE 41, 2003-Ohio-6279, at ¶ 111 (no Doyle violation where appellant attempted to show he was denied opportunity to explain his version; "[t]he state cannot be expected to forego commenting on a defendant's post-arrest silence when the defendant himself testifies about that silence as part of his defense"). See, also, United States v. Robinson (1988), 485 U.S. 25,108 S.Ct. 864 (defendant's Fifth Amendment rights not violated by prosecutor's comments on failure of defendant to testify in response to defense counsel's closing argument that government had not allowed defendant to tell his side of the story); State v. Champion (2005), 134 Cal. App.4th 1440, 1450-1451 (no Doyle violation where prosecutor sought to rebut defendant's claim he had not been given an opportunity to tell his side of the story; *Page 12 
prosecutor was not taking unfair advantage of defendant's exercise of his constitutional right to remain silent but, instead, prosecutor's inquiry was a fair response to defendant's claim)." State v. Exum, Franklin App. No. 05AP-894, 2007-Ohio-2648 at ¶ 40.
 {¶ 47} In the case at bar, the prosecutor did not initially question Deputy Kline about appellant's post-arrest silence. The inquiry was made only after the defense questioned why the Deputy only obtained a written statement from, and photographs showing the injuries to, the victim.State v. Eason, Belmont App. No. 02 BE 41, 2003-Ohio-6279 at ¶ 106. The reference was a fair response to a claim made by defendant or his counsel that the police failed to objectively investigate both sides of the case.
 {¶ 48} In light of the evidence presented, we cannot conclude that the outcome of the trial clearly would have been different had this line of inquiry by the prosecution not been presented, and, thus, any potential error is harmless beyond a reasonable doubt.
 {¶ 49} Appellant's second assignment of error is denied.
 III. {¶ 50} In his third assignment of error, appellant argues that the complaint filed in the case at bar fails to state all the essential elements of the crime of domestic violence. Specifically, the complaint lacks the mens rea element of "knowingly."
 {¶ 51} Appellant relies upon the case of State v. Colon,118 Ohio St.3d 26, 2008-Ohio-1624. In Colon, the Ohio Supreme Court held that an indictment for robbery in violation of R.C. 2911.02(A)(2) omitted an essential element of the crime by failing to charge a mens rea, i.e., that the defendant recklessly inflicted, attempted to inflict, or threatened to inflict physical harm. The court determined that the indictment failed to *Page 13 
charge an offense, a constitutional, structural error not waived by failing to raise that issue in the trial court. However, the Supreme Court reconsidered this position. State v. Colon ("Colon II "), — Ohio St.3d — — , 2008-Ohio-3749. In Colon II, the Court held:
 {¶ 52} "Applying structural-error analysis to a defective indictment is appropriate only in rare cases, such as Colon I, in which multiple errors at the trial follow the defective indictment. In Colon I, the error in the indictment led to errors that "permeate[d] the trial from beginning to end and put into question the reliability of the trial court in serving its function as a vehicle for determination of guilt or innocence." Id. at ¶ 23, 885 N.E.2d 917, citing State v. Perry,101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, at ¶ 17. Seldom will a defective indictment have this effect, and therefore, in most defective indictment cases, the court may analyze the error pursuant to Crim. R. 52(B) plain-error analysis." Id. at ¶ 8. The Court noted the multiple errors that occurred in Colon I:
 {¶ 53} "As we stated in Colon I, the defect in the defendant's indictment was not the only error that had occurred: the defective indictment resulted in several other violations of the defendant's rights. 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917, ¶ 29. InColon I, we concluded that there was no evidence to show that the defendant had notice that recklessness was an element of the crime of robbery, nor was there evidence that the state argued that the defendant's conduct was reckless. Id. at ¶ 30, 885 N.E.2d 917. Further, the trial court did not include recklessness as an element of the crime when it instructed the jury. Id. at ¶ 31, 885 N.E.2d 917. In closing argument, the prosecuting attorney treated robbery as a strict-liability offense. Id." Colon II at ¶ 6. *Page 14 
 {¶ 54} In the case at bar, the prosecutor argued that the State was required to prove beyond a reasonable doubt that appellant acted "knowingly." (T. at 160). The trial court instructed the jury, "[b]efore you can find that the [sic] Defendant guilty you must find beyond a reasonable doubt . . . the Defendant Richard A. Vance, knowingly caused or attempted to cause physical harm to a family or household member, specifically his wife, Rhonda Vance." (T. at 176). Appellant did not object to this instruction.
 {¶ 55} Accordingly, this is not a case where the omission in the complaint permeated the trial from beginning to end and put into question the reliability of the trial court in serving its function as a vehicle for determination of guilt or innocence. This Court may analyze the error in this case pursuant to the Crim. R. 52(B) plain-error analysis.
 {¶ 56} Crim. R. 52(B) provides that, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."State v. Long (1978), 53 Ohio St. 2d 91, paragraph three of the syllabus. In order to find plain error under Crim. R. 52(B), it must be determined, but for the error, the outcome of the trial clearly would have been otherwise. Id. at paragraph two of the syllabus. Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to `prevent a manifest miscarriage of justice.' " State v. Barnes (2002), 94 Ohio St.3d 21, 27,759 N.E.2d 1240, quoting State v. Long (1978), 53 Ohio St.2d 91,372 N.E.2d 804, paragraph three of the syllabus. Perry, supra, at 118,802 N.E.2d at 646. *Page 15 
 {¶ 57} Under the circumstances, where the trial court correctly informed the jury as to the mens rea required for the commission of the crime, and the defendant had notice through the arguments of counsel, and did not object the defendant failed to preserve his claim that the complaint against him was constitutionally defective. There is nothing in the record to show that the appellant was prejudiced. We find any error in the complaint was harmless beyond a reasonable doubt.
 {¶ 58} Appellant's third assignment of error is denied.
 IV. {¶ 59} In his fourth assignment of error appellant argues that his investigator was not allowed inside the residence to take photographs. Appellant contends that this violated his constitutional right to present a defense. We disagree.
 {¶ 60} Prior to trial appellant filed a motion in limine seeking to exclude any witnesses from testifying that he or she saw from inside the home the confrontation in the garage between the appellant and his wife. The trial court overruled the motion prior to the testimony of Tyler Robinson.
 {¶ 61} In State v. Pyo, Delaware App. No. 04CAA01009, 2004-Ohio-4768, we explained:
 {¶ 62} "`In general, the ruling on a motion in limine does not preserve the record on appeal and an appellate court need not review the ruling unless the claimed error is preserved by an objection at trial.State v. Grubb (1986), 28 Ohio St.3d 199, 503 N.E.2d 142, paragraph two of the syllabus, citing State v. Leslie (1984), 14 Ohio App.3d 343, 344,471 N.E.2d 503; State v. Brown (1988), 38 Ohio St.3d 305,528 N.E.2d 523, paragraph three of the syllabus; State v. Maurer (1984),15 Ohio St.3d 239, *Page 16 259 N.E.2d 633; Columbus v. Sullivan (1982), 4 Ohio App.3d 7, 9, 446 N.E.2d 485;State v. Steiner (July 19, 1983), Stark App. No. CA-6145, unreported.'State v. Crowley (Aug. 27, 1998), Perry County App. No. 97 CA 69." Id. at ¶ 19."
 {¶ 63} In the case at bar, the trial court noted that its ruling on appellant's motion in limine was interlocutory. (T. at 87). Appellant's trial counsel did not object, move to strike or renew the motion at any time during the testimony of Tyler Robinson. Accordingly, the trial court's denial of appellant's motion in limine was an interlocutory order and therefore, appellant's failure to object did not preserve the error for appeal. However, assuming arguendo that appellant did object the outcome would not change.
 {¶ 64} Every criminal defendant has a constitutional right to present a meaningful defense. Crane v. Kentucky (1986), 476 U.S. 683, 690,106 S.Ct. 2142. However, this right does not engender an unfettered entitlement to the admission of any and all evidence. U.S. v.Scheffer (1998), 523 U.S. 303, 308, 118 S.Ct. 1261.
 {¶ 65} In the case at bar, the trial court afforded appellant ample opportunity to present and proffer evidence in order to establish the prejudicial effect of not being permitted to photograph the inside of the residence. In this regard appellant's trial counsel stated its objection, "If it's going to be that this guy is going to testify that he went out and saw his mom on the ground, that's one thing. We have no objection to that. But if it's going to be that he's saying they observed anything other than that, that's what we're asking this Court to decide." (T. at 84).
 {¶ 66} Appellant has not cited any page reference in the record where objectionable testimony was elicited. *Page 17 
 {¶ 67} "Appellate attorneys should not expect the court `to peruse the record without the help of pinpoint citations' to the record. Day v. N.Indiana Pub. Serv. Corp. (C.A.7, 1999), 164 F.3d 382, 384 (imposing a public reprimand and a $500 fine on an attorney for repeated noncompliance with court rules). In the absence of the page references that S.Ct.Prac. R. VI(2)(B)(3) requires, the court is forced to spend much more time hunting through the record to confirm even the most minor factual details to decide the case and prepare an opinion. That burden ought to fall on the parties rather than the court, for the parties are presumably familiar with the record and should be able to readily identify in their briefs where each relevant fact can be verified."State ex rel. Physicians Commt. for Responsible Medicine v. Ohio StateUniv. Bd. of Trustees, 108 Ohio St.3d 288, 2006-Ohio-903, at ¶ 13;State ex rel. Petro v. Gold, 166 Ohio App. 3d 371, 2006-Ohio-943, at ¶ 94, appeal not allowed, 110 Ohio St. 3d 1439, 2006-Ohio-3862, reconsideration denied, 111 Ohio St.3d 1418, 2006-Ohio-5083; Porter v.Keefe, Erie App. No. E-02-018, 2003-Ohio-7267, at ¶ 109-113.
 {¶ 68} Because appellant fails to properly reference portions of the record supporting his claim so as to entitled him to be permitted to photograph the inside of the residence appellant cannot demonstrate the claimed error. See Daniels v. Santic, Geauga App. No. 2004-G-2570,2005-Ohio-1101, at ¶ 13-15. See, also, App. R. 12(A) (2) and 16(A) (7);Graham v. City of Findlay Police Dept. (Mar. 19, 2002), Hancock App. No. 5-01-32; State v. Davis, Licking App. No. 2007-CA-00104, 2008-Ohio-2418
at ¶ 91.
 {¶ 69} The witness Tyler Robinson testified that while he was inside the home he did not observe what happened between the appellant and the victim in the garage or outside the residence. Accordingly, photographs of the inside of the home were *Page 18 
irrelevant. Any error in the trial court's overruling appellant's motion in limine was harmless beyond a reasonable doubt.
 {¶ 70} Appellant's fourth assignment of error is denied.
 V. {¶ 71} In his fifth assignment of error, appellant argues that the trial court gave confusing and conflicting instructions on self-defense to which he did not object.
 {¶ 72} Crim. R. 30(A) governs instructions and states as follows:
 {¶ 73} "At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. Copies shall be furnished to all other parties at the time of making the requests. The court shall inform counsel of its proposed action on the requests prior to counsel's arguments to the jury and shall give the jury complete instructions after the arguments are completed. The court also may give some or all of its instructions to the jury prior to counsel's arguments. The court need not reduce its instructions to writing.
 {¶ 74} "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury."
 {¶ 75} Appellant did not file a written request for specific jury instructions, and did not object to the trial court's jury instructions. Based upon appellant's failure to proffer instructions or object to the instructions and bring the issue to the trial court's attention *Page 19 
for consideration, we must address this assignment under the plain error doctrine. State v. Wamsley, 117 Ohio St.3d 388, 2008-Ohio-1195 at ¶ 25,884 N.E.2d 45.
 {¶ 76} The defendant bears the burden of demonstrating that a plain error affected his substantial rights. United States v. Olano (1993), 507 U.S. at 725,734, 113 S.Ct. 1770; State v. Perry (2004),101 Ohio St.3d 118, 120 802 N.E.2d 643, 646. Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to `prevent a manifest miscarriage of justice.' "State v. Barnes (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240, quotingState v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. Perry, supra, at 118, 802 N.E.2d at 646;Wamsley, supra at ¶ 27.
 {¶ 77} Appellant focuses on the issue of self-defense. To establish self-defense in the use of non-deadly force, the accused must show that (1) he was not at fault in creating the situation giving rise to the altercation; (2) that he had reasonable grounds to believe and an honest belief, even though mistaken, that some force was necessary to defend himself against the imminent use of unlawful force, and (3) the force used was not likely to cause death or great bodily harm. In Re:Maupin (Dec. 11, 1998), Hamilton App. No. C-980094, unreported; Columbusv. Dawson (1986), 33 Ohio App.3d 141, 142; R.C. 2901.05(A); State v.Walker (Feb. 20, 2001), Stark App. No. 2000CA00128.
 {¶ 78} Appellant's argument that a defendant "need not be in `imminent danger' to use self-defense" is feckless. (Appellant's Brief at 14).
 {¶ 79} In the case at bar, the trial court instructed the jury as follows:
 {¶ 80} "The Defendant is justified in using some force in self-defense when he reasonably believes that such conduct is necessary to defend himself against the *Page 20 
imminent use of unlawful force, and that the force used was not likely to cause death or great bodily harm.
 {¶ 81} "* * *
 {¶ 82} "In determining whether the Defendant has reasonable grounds for an honest belief that he was in imminent danger you must put yourself in the position of the Defendant with his characteristics, his knowledge or lack of knowledge and under the circumstances and conditions that surrounded him at that time. You must consider the conduct of Rhonda Vance and determine if her acts and words caused the Defendant to reasonably and honestly believe that he was about to receive bodily harm.
 {¶ 83} "* * *
 {¶ 84} "A Defendant is not in a position to claim self-defense if he sought trouble and he provoked a fight or renewed a fight that had been broken off and did not attempt to avoid it or leave the scene of the trouble." (T. at 179-181).
 {¶ 85} In the case at bar, appellant argues that to the extent the instruction stated that he "did not attempt to avoid it or leave the scene of the trouble" it implies a duty to retreat that the law does not impose when non-deadly force is used. Further appellant claims that the instruction "the Defendant to reasonably and honestly believe that he was about to receive bodily harm" placed a greater burden on him since all that is required is that he have reasonable grounds to believe his use of force was necessary to defend himself against the "imminent use of unlawful force."
 {¶ 86} In addressing a similar argument the Court in State v.Dietz Cuyahoga App. No. 81823, 2003-Ohio-3249 stated: *Page 21 
 {¶ 87} "Appellant is correct that he had no duty to retreat. The trial court's instruction does not state that he did. The instruction simply reiterated the general principle that, had there been a duty to retreat, appellant must not have violated that duty. The record before the jury is completely devoid of any discussion of a duty to retreat. There is no reason to believe the jury was misled or confused by this instruction or that an additional burden was placed on appellant. Reviewing the jury instruction as a whole, we find the instruction was not prejudicial."
 {¶ 88} An appellate court must review the instructions as a whole and the entire record to determine whether a manifest miscarriage of justice has occurred as a result of the error in the instructions. State v.Wansley, supra, 117 Ohio St.3d at 392, 2008-Ohio-1195 at ¶ 17,884 N.E.2d at 49. (Citing State v. Adams (1980), 62 Ohio St.2d 151, 404 N.E.2d 144
at paragraph three of the syllabus).
 {¶ 89} In the case at bar any incorrect statement in the jury instructions did not rise to level of plain error. The record before this Court does not conclusively demonstrate that outcome of trial would have clearly been otherwise absent the instructions. No manifest miscarriage of justice has occurred because of the trial court's jury instructions concerning self-defense.
 {¶ 90} Appellant's fifth assignment of error is denied.
 VI. VII. {¶ 91} In his sixth assignment of error, appellant argues that there is insufficient evidence to prove that he "knowingly" caused or attempted to cause physical harm. In his seventh assignment of error appellant claims the verdict of guilty is against the manifest weight of the evidence. We shall address these assignments of error together. *Page 22 
 {¶ 92} Appellant claims that the evidence discloses an "accident or involuntary reflex." (Appellant's Brief at 19). We disagree.
 {¶ 93} The Ohio Supreme Court recently addressed the standard of review for a criminal manifest weight and sufficiency of the evidence challenge, as follows:
 {¶ 94} "The criminal manifest-weight-of-the-evidence standard was explained in State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541. In Thompkins, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386,678 N.E. 2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386-387, 678 N.E. 2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. Id. at 387,678 N.E. 2d 541. `When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the fact finder's resolution of the conflicting testimony.' Id. at 387,678 N.E.2d 541, citing Tibbs v. Florida (1982), 457 U.S. 31, 42,102 S.Ct. 2211, 72 L.Ed.2d 652.
 {¶ 95} "Both C.E. Morris Co., 54 Ohio St. 2d 279, 8 O.O.3d 261,376 N.E.2d 578, and Thompkins instruct that the fact-finder should be afforded great deference. However, the standard in C.E. Morris Co. tends to merge the concepts of weight and sufficiency. See State v. Maple
(Apr. 2, 2002), 4th Dist. No. 01CA2605, *Page 23 2002 WL 507530, fn. 1; State v. Morrison (Sept. 20, 2001), 10th Dist. No. 01AP-66, 001 WL 1098086. Thus, a judgment supported by "some competent, credible evidence going to all the essential elements of the case" must be affirmed. C.E. Morris Co. Conversely, under Thompkins, even though there may be sufficient evidence to support a conviction, a reviewing court can still reweigh the evidence and reverse a lower court's holdings. State v. Thompkins, 78 Ohio St. 3d 380, 678 N.E.2d 541. Thus, the civil-manifest-weight-of-the-evidence standard affords the lower court more deference then does the criminal standard. See Barkley v.Barkley (1997), 119 Ohio App. 3d 155, 159, 694 N.E.2d 989." State v.Wilson, 713 Ohio St. 3d 382, 387-88, 2007-Ohio-2202 at ¶ 25-26;865 N.E.2d 1264, 1269-1270.
 {¶ 96} However, an appellate court may not merely substitute its view for that of the jury, but must find that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, supra,78 Ohio St. 3d at 387. (Quoting State v. Martin (1983), 20 Ohio App.3d 172,175, 485 N.E. 2d 717, 720-721). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 97} In State v. Thompkins, supra, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id. at paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals *Page 24 
panel reviewing the case is required." Id. at paragraph four of the syllabus; State v. Miller (2002), 96 Ohio St.3d 384, 2002-Ohio-4931
at ¶ 38, 775 N.E.2d 498.
 {¶ 98} Criminal liability is predicated upon two components: the voluntary commission of a prohibited act and the requisite mental culpability or mens rea required for the offense. R.C. 2901.21. Accident is not an affirmative defense. State v. Poole (1973), 33 Ohio St. 2d 18,294 N.E. 2d 888. Rather, it is a factual defense that denies that the accused acted with the degree of culpability or mens rea required for the offense, when that involves purposeful conduct. State v. Bayes (Dec. 29, 2000), Clark App. No. 00CA0032. By raising the defense of accident defendant denies that the act was intentional or purposeful. State v.Fears, 86 Ohio St. 3d 329, 715 N.E.2d 136, 1999-Ohio-111.
 {¶ 99} Accident is defined as a "mere physical happening or event, out of the usual order of things and not reasonably (anticipated) (foreseen) as a natural or probable result of a lawful act." 4 Ohio Jury Instructions 75, Section 411.01(2). Moreover, "[a]n accidental result is one that occurs unintentionally and without any design or purpose to bring it about." Id.
 {¶ 100} Appellant's trial counsel did not request the court instruct the jury on accident. Rather, trial counsel requested that the court instruct the jury on self-defense. In State v. Champion (1924),109 Ohio St. 281, the Supreme Court stated:
 {¶ 101} "The very fact that requests were asked both on accidental homicide and self-defense, under the same evidence, presents a most peculiar paradox-a direct contradiction in terms and truth. Self-defense presumes intentional, willful use of force to repel force or escape force. Accidental force or shooting is exactly the contrary, *Page 25 
wholly unintentional and unwillful. It is similar to a person saying in one breath, `I was insane at the time of the homicide,' and in the next breath, `I shot in the exercise of my right of self-defense, with reasonable grounds therefore, as they appeared to me.'
 {¶ 102} "If the evidence warrants, the defendant has a right to one request or the other. By no manner of logic, law, or legerdemain is he entitled to both." Id. at 286-287.
 {¶ 103} To find appellant guilty of domestic violence the jury would have to find that appellant knowingly caused or attempt to cause physical harm to a family or household member. R.C. 2919.25(A). A spouse is a "family or household member." R.C. 2919.25(F) (1) (a). Physical harm to persons is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A) (3).
 {¶ 104} R.C. 2901.22 defines "knowingly" as follows:
 {¶ 105} "(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 106} Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." State v.Huff (2001), 145 Ohio App. 3d 555, 563, 763 N.E.2d 695. (Footnote omitted.) Thus, "[t]he test for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria." State v.McDaniel (May 1, 1998), Montgomery App. No. 16221, (citing State v.Elliott (1995), 104 Ohio App.3d 812, 663 N.E.2d 412). *Page 26 
 {¶ 107} The parties do not dispute that the victim and the appellant were husband and wife. In the case at bar, Rhonda Vance testified that appellant pushed her off the landing and she flew across the garage on to the concrete floor. (T. at 41). She further testified that she "hit pretty hard and it really hurt, really bad . . . the corner had went back into my shoulder . . . I didn't get up for a while . . . I couldn't get off the floor." (T. at 45). Photographs depicting her injuries were admitted into evidence. (T. at 45-47).
 {¶ 108} In Seasons Coal Co. v. Cleveland (1984), 10 Ohio St. 3d 77,81, 461 N.E.2d 1273, the Ohio Supreme Court explained: "[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." See, also State v.DeHass (1967), 10 Ohio St. 2d 230, syllabus 1.
 {¶ 109} As an appellate court, we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758. Accordingly, a judgment supported by competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.C.E. Morris Co. v. Foley Constr. (1978), 54 Ohio St. 2d 279,376 N.E. 2d 578.
 {¶ 110} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crime of domestic violence. *Page 27 
 {¶ 111} We hold, therefore, that the State met its burden of production regarding each element of the crime of domestic violence and, accordingly, there was sufficient evidence to support appellant's conviction.
 {¶ 112} "A fundamental premise of our criminal trial system is that `the jury is the lie detector.' United States v. Barnard, 490 F.2d 907,912 (C.A.9 1973) (emphasis added), cert. denied, 416 U.S. 959,94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the `part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' Aetna Life Ins. Co. v. Ward, 140 U.S. 76, 88,11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891)". United States v. Scheffer
(1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267.
 {¶ 113} Although appellant cross-examined the witnesses and argued that he did not knowingly inflict, attempt to inflict, or threaten to inflict physical harm, and further that he acted in self-defense, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. State v. Jamison (1990),49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881.
 {¶ 114} The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citing State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236 Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. State v. *Page 28 Raver, Franklin App. No. 02AP-604, 2003- Ohio-958, at ¶ 21, citingState v. Antill (1964), 176 Ohio St. 61, 67, 197 N.E.2d 548.; State v.Burke, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing State v.Caldwell (1992), 79 Ohio App. 3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v.Jenks (1991), 61 Ohio St. 3d 259, 574 N.E. 2d 492.
 {¶ 115} We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest miscarriage of justice so as to require a new trial. Viewing this evidence in a light most favorable to the prosecution, we further conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant knowingly caused physical harm to his spouse.
 {¶ 116} Accordingly, appellant's conviction for domestic violence was not against the manifest weight or the sufficiency of the evidence.
 {¶ 117} Appellant's sixth and seventh assignments of error are denied.
 VIII. {¶ 118} In his eight assignment of error appellant contends, appellant argues, in essence, that the trial court's imposition of a 90-day jail sentence is unconstitutional pursuant to United States v. Booker (2005),543 U.S. 220, 125 S.Ct. 738, Blakely v. Washington (2004), 542 U.S. 296,124 S.Ct. 2531 and State v. Foster, 109 Ohio St.3d. 1, 2006-Ohio-856,845 N.E.2d 470. We disagree.
 {¶ 119} In sentencing appellant, the trial court stated:
 {¶ 120} "Well, there's a couple of things that come to mind. Number one, to suggest that the family dynamics or the children are going to be affected by the *Page 29 
decisions that come out of this court is probably misplaced. What they will be affected by are the decisions that Mr. Vance made in this case. What's particularly disturbing to the Court, in that the Court heard all the evidence and the testimony, was that this goes beyond a marital relationship that's going to end badly. There were children actually involved with the violence. And I wrote down when this happened, when it was testified in court that it took a teenager to tell Mr. Vance that he should act like the adult in this situation."(T. at 202-203).
 {¶ 121} Appellant argues that the trial court's statement "[t]here were children actually involved with the violence" constitutes judicial fact-finding.
 {¶ 122} In the case at bar, appellant was found guilty by a jury of a first-degree misdemeanor offense, i.e. R.C. 2919.25. The applicable sentencing range pursuant to R.C. 2929.24(A) (1) is "not more than one hundred eighty days."
 {¶ 123} As we have noted, the Court in Foster concluded judicial fact-finding is not required before a prison term can be imposed within the basic ranges of R.C. 2929.14(A) based upon a jury verdict or admission of the defendant, or before imposition of consecutive prison terms. Id. at paragraphs 2 and 4 of the syllabus. State v. Goggans, Delaware App. No. 2006-CA-07-0051, 2007-Ohio-1433 at ¶ 21. The same rationale would apply to misdemeanor sentencing under R.C. 2929.24(A) (1).
 {¶ 124} "Although the appellant characterizes the trial judge's statements as `judicial fact-finding' his argument is essentially one of form over substance. The maximum sentence a judge may impose afterFoster is the `statutory maximum.' In this case, that is [one hundred and eighty days]. Appellant's sentence of [ninety days] is within the range provided by statute. *Page 30 
 {¶ 125} "The trial court was not required to find any additional fact in order to impose this sentence. The court could have imposed the maximum sentence without making any statement on the record. The fact that the trial judge explained his reasons for imposing the maximum sentence on the record cannot transform a sentence within the rangeprovided by statute into a constitutionally infirm sentence on the grounds that the statements constitute impermissible `judicial fact-finding.'" State v. Goggans, supra at ¶ 23-24.
 {¶ 126} We further note, there is no constitutional right to an appellate review of a criminal sentence. Moffitt v. Ross (1974),417 U.S. 600, 610-11, 94 S.Ct. 2437, 2444; McKane v. Durston (1894),152 U.S. 684, 687, 14 S. Ct. 913. 917; State v. Smith (1997),80 Ohio St. 3d 89, 1997-Ohio-355, 684 N.E. 2d 668; State v. Firouzmandi, 5th Dist No. 2006-CA-41, 2006-Ohio-5823. An individual has no substantive right to a particular sentence within the range authorized by statute. Gardner v. Florida (1977), 430 U.S. 349, 358,97 S.Ct. 1197, 1204-1205.
 {¶ 127} This Court reviews the imposition of more-than-minimum, maximum, or consecutive sentences for abuse of discretion. State v.Firouzmandi, 5th Dist. No. 2006-CA-41, 2006-Ohio-5823, at ¶ 40.
 {¶ 128} There is no evidence in the record that the judge acted unreasonably by, for example, selecting the sentence arbitrarily, basing the sentence on impermissible factors, failing to consider pertinent factors, or giving an unreasonable amount of weight to any pertinent factor. We find nothing in the record of appellant's case to suggest that his sentence was based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment. *Page 31 
 {¶ 129} Appellant's eighth assignment of error is denied.
 {¶ 130} For the foregoing reasons, the judgment of the Municipal Court of Ashland County, Ohio is affirmed.
Gwin, J., Hoffman, P.J., and Farmer, J., concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Municipal Court of Ashland County, Ohio is affirmed. Costs to appellant. *Page 1