OPINION *Page 2 
{¶ 1} Appellant, Lisa Rash, appeals from her conviction on one count of patient endangerment. Appellee is the State of Ohio.
 STATEMENT OF FACTS AND CASE {¶ 2} Appellant was employed as a home health aide by Interim Health Care. Her sole responsibility was to provide health aide services to her brother-in-law, Terry Rash, which were subsidized through Carestar. Terry suffers from spina bifida, kidney problems, paralysis and mental retardation. Terry has also suffered from recurring bedsores. Appellant's duties as a home health aide for Terry were to help Terry with bathing, dressing, personal care, meal preparation, light housekeeping and running errands. Carestar provided disbursement of government funds to provide care and equipment for Terry, as well as paying appellant for her services. Appellant, her husband and her two children lived in the same home with Terry and Terry's father, Jesse Rash.
 {¶ 3} On May 18, 2007, two employees of the Stark County Board of Mental Retardation and Developmental Disabilities (hereinafter "MRDD") and a deputy sheriff went to the Rash home in response to concerns from Carestar, after repeated attempts by a Carestar caseworker to contact appellant had failed. They had difficulty getting into the home because of two large dogs outside the home, inside a chain link fence. The yard was covered with dog feces, and from the street they could smell a foul odor coming from the house. The home had broken windows and windows with no glass.
 {¶ 4} Upon entering the home, the odor was stronger, the ceiling was leaking, and there were bugs everywhere. One room was filled with puppies, and the floor of *Page 3 
that room was covered with feces and urine. Terry's room was cold, there were chicken bones and cigarette butts on the floor, and the bed linens were soiled with feces and urine. Terry was wearing a t-shirt but no pants, and he was covered with a sheet. He was dirty and smelled bad, and his teeth were black. He had dried fecal matter on his leg and his catheter bag was extremely full. Concerned with the condition of a bedsore on Terry, they called paramedics to transport Terry to Aultman Hospital for treatment. Terry was eventually moved to a group home.
 {¶ 5} On November 15, 2007, the Stark County Grand Jury indicted appellant on a misdemeanor charge of patient endangerment in violation of R.C. 2903.341(B). The indicted misdemeanor charge was subsequently transferred from the Stark County Common Pleas Court to the Canton Municipal Court for further prosecution. In the indictment, appellant, an MRDD caretaker, was accused of causing a substantial risk to the health and safety of Terry Rash, a mentally disabled adult.
 {¶ 6} On March 3, 2008, the matter proceeded to jury trial. After the presentation of evidence, appellant was found guilty as charged of patient endangerment. Appellant was sentenced to serve 180 days in the county jail, was fined $100.00 and was ordered to pay court costs.
 {¶ 7} It is from this conviction and sentence that appellant now appeals, setting forth the following assignments of error:
 {¶ 8} "I. APPELLANT'S FOURTEENTH AMENDMENT RIGHTS TO DUE PROCESS IN THE UNITED STATES CONSTITUTION AND SECTION 1 ARTICLE I OF THE OHIO CONSTITUTION WERE VIOLATED WHEN HER INDICTMENT FAILED TO CONTAIN AN ESSENTIAL ELEMENT OF THE OFFENSE-THE `RECKLESS' *Page 4 
MENS REA ELEMENT, AND WHEN THE TRIAL COURT FAILED TO INSTRUCT THE JURY ON THE REQUISITE MENS REA.
 {¶ 9} "II. THE TRIAL COURT ABUSED ITS DISCRETION AND VIOLATED APPELLANT'S FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS WHEN THE COURT CHANGED THE DATE IN THE RECORDS AFTER THE STATE AND COUNSEL FOR APPELLANT HAD FILED A JOINT STIPULATION TO THE AUTHENTICITY OF THOSE RECORDS.
 {¶ 10} "III. THE TRIAL COURT ERRED IN FAILING TO SUPPRESS STATEMENTS MADE BY APPELLANT IN VIOLATION OF HER SIXTH AMENDMENT RIGHT TO COUNSEL.
 {¶ 11} "IV. THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO SANCTION THE STATE OF OHIO FOR VIOLATING RULES OF DISCOVERY. SPECIFICALLY, THE STATE OF OHIO FAILED TO DISCLOSE AND PROVIDE APPELLANT WITH A COPY OF A TAPED STATEMENT MADE BY APPELLANT TO LAW ENFORCEMENT OFFICIALS, IN VIOLATION OF CRIM.R. 16.
 {¶ 12} "V. THE PROSECUTION VIOLATED APPELLANT'S CONSTITUTIONAL RIGHTS UNDER ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION, FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND THE DUE PROCESS CLAUSE OF THEFOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION WHEN IT ENGAGED IN IMPROPER QUESTIONING OF WITNESSES AND COMMENTARY DESIGNED TO APPEAL TO THE PASSIONS OF THE JURY. *Page 5 
 {¶ 13} "VI. APPELLANT'S CONVICTION FOR PATIENT ENDANGERMENT WAS BASED ON INSUFFICIENT EVIDENCE.
 {¶ 14} "VII. THE TRIAL COURT COMMITTED ERROR IN FAILING TO PERMIT THE DEFENDANT THE RIGHT OF ALLOCUTION."
 I {¶ 15} In her first assignment of error, appellant argues that the culpable mental state for the charge of patient endangerment is recklessness. Appellant also argues that the indictment charging the misdemeanor offense of patient endangerment was defective for failing to include recklessness as an element of the offense. Appellant argues that the deficiency in the indictment so permeated the trial as to cause structural error, citing State v. Colon, 118 Ohio St.3d 26,2008-Ohio-1624, 885 N.E.2d 917, ("Colon I").
 {¶ 16} In Colon I, the court held that because R.C. 2911.02(A)(2), which defines the crime of robbery, does not specify a particular degree of culpability, nor does the statute plainly indicate that strict liability is the mental standard, pursuant to R.C. 2901.21(B), the state was required to prove beyond a reasonable doubt that the defendant acted recklessly. Colon, 2008-Ohio-1624, ¶ 14, 118 Ohio St.3d 26,885 N.E. 2d 917.
 {¶ 17} In the instant case, appellant was indicted for patient endangerment in violation of R.C. 2903.341(B), which provides:
 {¶ 18} "No MRDD caretaker shall create a substantial risk to the health or safety of a mentally retarded person or a developmentally disabled person." *Page 6 
 {¶ 19} The language of the patient endangerment statute does not specify a culpable mental state. Pursuant to R.C. 2901.21(B), "[w]hen the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense." The Ohio Supreme Court has repeatedly held that the drafter of a statute or ordinance must plainly indicate in the language of the statute an intent to impose strict liability. State v. Collins,89 Ohio St.3d 524, 530, 733 N.E.2d 1118, 2000-Ohio-231; State v. Moody,104 Ohio St.3d 244, 819 N.E.2d 268, 2004-Ohio-6395.
 {¶ 20} This Court has held that the legislature did not intend to impose strict liability for a violation of R.C. 2903.341, and that the culpable mental state is therefore recklessness. State v. McMillen, Stark App. No. 2008CA00122, 2009-Ohio-210, ¶ 35. In McMillen, we noted that the Ohio Supreme Court has held that an indictment for child endangering which does not contain the culpable mental state of recklessness is insufficient to charge the offense. Id. at ¶ 32, citingState v. O'Brien (1987), 30 Ohio St. 3d 122, 508 N.E. 2d 144. The endangering children statute includes the same language as the patient endangerment statute, requiring the state to prove that the offender created a "substantial risk to the health or safety" of the child. Id. at ¶ 34. This Court concluded that based on the similarities in the statutes, the legislature did not intend to impose strict liability for patient endangerment, and the culpable mental state of recklessness is grafted into the statute by virtue of R.C. 2901.21(B). Id. at ¶ 35. *Page 7 
 {¶ 21} The plain language of R.C. 2903.341(B) does not indicate that the legislature intended to impose strict liability for the offense of patient endangerment. Therefore, recklessness is sufficient culpability to commit the offense of patient endangerment.
 {¶ 22} R.C. 2901.22(C) defines recklessly as follows: "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."
 {¶ 23} In the case sub judice, the indictment for patient endangerment fails to charge that the appellant acted recklessly in creating a substantial risk to the health or safety of Terry Rash, a mentally retarded person or a developmentally disabled person. This omission in the indictment, of one of the essential elements of the crime of patient endangerment, renders the indictment defective.
 {¶ 24} We must next consider whether the deficiency in the indictment so permeated the conduct of the trial that it could only be considered structural error, or whether we should analyze the error pursuant to a Crim. R. 52(B) plain-error analysis.
 {¶ 25} In Colon I, the Ohio Supreme Court held that an indictment for robbery in violation of R.C. 2911.02(A)(2) omitted an essential element of the crime by failing to charge a mens rea, i.e., that the defendantrecklessly inflicted, attempted to inflict, or threatened to inflict physical harm. The court determined that the indictment failed to *Page 8 
charge an offense, which was a constitutional, structural error not waived by failing to raise that issue in the trial court.
 {¶ 26} However, as this Court noted in State v. Vance, Ashland App. No. 2007-COA-035, 2008-Ohio-4763, the Supreme Court reconsidered this position in State v. Colon ("Colon II"), 119 Ohio St.3d 204,893 N.E.2d 169, 2008-Ohio-3749. In Colon II, the court held:
 {¶ 27} "Applying structural-error analysis to a defective indictment is appropriate only in rare cases, such as Colon I, in which multiple errors at the trial follow the defective indictment. In Colon I, the error in the indictment led to errors that `permeate[d] the trial from beginning to end and put into question the reliability of the trial court in serving its function as a vehicle for determination of guilt or innocence.'" Id. at ¶ 23, 885 N.E.2d 917, citing State v. Perry,101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 17. Seldom will a defective indictment have this effect and, therefore, in most defective indictment cases, the court may analyze the error pursuant to Crim. R. 52(B) plain-error analysis." Id. at ¶ 8, 802 N.E.2d 643. The Court noted the multiple errors that occurred in Colon I:
 {¶ 28} "As we stated in Colon I, the defect in the defendant's indictment was not the only error that had occurred: the defective indictment resulted in several other violations of the defendant's rights. 118 Ohio St. 3d 26, 2008-Ohio-1624, 885 N.E.2d 917, ¶ 29. InColon I, we concluded that there was no evidence to show that the defendant had notice that recklessness was an element of the crime of robbery, nor was there evidence that the state argued that the defendant's conduct was reckless. Id. at ¶ 30, 885 N.E. 2d 917. Further, the trial court did not include recklessness as an *Page 9 
element of the crime when it instructed the jury. Id. at ¶ 31,885 N.E.2d 917. In closing argument, the prosecuting attorney treated robbery as a strict-liability offense. Id." Colon II at ¶ 6. See also,Vance, supra at ¶ 51-53.
 {¶ 29} In the case sub judice, prior to the presentation of evidence, the prosecutor objected to proposed jury instructions submitted to the court by appellant which included the mental state of recklessness, arguing that when he looked at the statute, he didn't "see recklessness anywhere." T.60. Counsel for appellant responded that because there is no mens rea in the statute, the mental state should be recklessness. In response, the trial court stated, "Well, I can only tell you this, that my notes indicate, and I think I'm fairly consistent with this, the Court's going to parrot the statute." Tr. 60.
 {¶ 30} During trial, the State pursued the charge and questioned witnesses as if the charge of patient endangerment were a strict liability offense. Carrie Buchanan, a support administrator for MRDD, was asked by the State to give a final opinion regarding the appellant's actions and the alleged victim's condition as follows: "[i]n your opinion, [given] your training, your experience in the work that you do, does Terry Rash's condition create a substantial risk to his health and safety? And that's the key language, substantial risk to his health and safety." Ms. Buchanan responded, "yes." T.130. Similarly, when questioning Stacy Savage, a support administrator for MRDD, the prosecutor asked, "Having seen the condition of the house, using the experience that you have, would you — would you indicate that you believe Terry was receiving proper care?" Tr. 100-101. Ms. Savage responded that he was not. The prosecutor then asked, "And again, in your opinion, with the conditions of the house and the care *Page 10 
that — that he wasn't receiving, does this create a substantial risk to his health and well-being?" Tr. 101. Ms. Savage responded, "Absolutely." Id. The state's line of questioning reflected the state's position that this was a strict liability offense: appellant was paid to care for Terry, he was not receiving proper care, and the lack of proper care created a substantial risk to his health and well-being. The state's questioning did not attempt to prove that with heedless indifference to the consequences, appellant perversely disregarded a known risk that her conduct was likely to cause a certain result, which is the statutory definition of recklessness.
 {¶ 31} During closing argument, the State did not advise the jury that recklessness was an element of the offense, nor did the State argue that the appellant acted recklessly in caring for Terry Rash. Rather, the State argued, "This case is all about the things that Lisa Rash failed to do . . . all the times she failed to give him a bath or failed to feed him or failed to change his diapers or failed to clean him up or just sweep or dust-all the things she failed to do — You didn't hear any testimony that she failed to pick up her check every time. She got her check on time every month like anybody — I guarantee ya' of that." T.266. The State closed by saying, "[T]he statute's simple in this case and the Judge is going to instruct you on that — did the defendant's conduct, Lisa Rash, create a substantial risk to the health or safety of Terry Rash? That's all you need to ask yourself." T.268.
 {¶ 32} After the presentation of evidence and before closing argument, counsel for appellant again requested an instruction on the mental state of recklessness. The State responded, "I've read the statute in several forms and I've never seen reckless. I don't see why the Court should insert it's [sic] own mens rea into the statute." Tr. 262. *Page 11 
 {¶ 33} After closing arguments, the court instructed the jury as follows:
 {¶ 34} "Members of the Jury, the accused is charged with patient endangerment. Before you can find the accused guilty, you must find beyond a reasonable doubt that as a result of a continuous course of conduct from on or about the First day of January, 2007 to on or about the 20th day of May, 2007, in the City of Canton, Stark County, Ohio, the accused Lisa Rash, as an MRDD caretaker did create a substantial risk to the health or safety of a mentally retarded person or developmentally disabled person, that person being Terry Rash." T.279. The trial court did not instruct the jury on the culpable mental state of recklessness as an element of the offense.
 {¶ 35} During deliberations, the spokesperson for the jury asked the following question in open court, "Uh, the question is the definition again, we'd like to hear you read the definition of what the, uh, what exactly the criminal intent of what it is." T.285.
 {¶ 36} In response to the inquiry regarding the culpable mental state required for the crime of patient endangerment, the court repeated the following portion of its earlier instruction:
 {¶ 37} "THE COURT: Members of the jury, the accused is charged with patient endangerment. Before you find the accused guilty, you must find beyond a reasonable doubt that as a continuance [sic] course of conduct from January 1st, 2007, to on or about the 20th day of May, 2007, in the city of Canton, Stark County, Ohio, the accused Lisa Rash, as an MRDD caretaker did create a substantial risk to the health or safety of a mentally retarded person or a developmentally disabled person, that person being Terry Rash. An MRDD caretaker does not create a substantial risk to the health or safety of a mentally retarded person or a developmentally disabled person under this *Page 12 
statute when the MRDD caretaker treats a physical or mental illness or defect of the mentally retarded person or developmentally disabled person by spiritual means through prayer along in accordance with the tenets of a recognized religious body. Is that sufficient for the members of the jury?
 {¶ 38} "UNIDENTIFIED JUROR: Yes. Thank You.
 {¶ 39} "THE COURT: you may again begin you [sic] deliberations."
 {¶ 40} Based upon the record, we find that similar to Colon I, the defective indictment led to errors that permeated the trial from beginning to end and put into question the reliability of the trial court in serving its function as a vehicle for determination of guilt or innocence. Colon II at ¶ 23. As in Colon I, the defective indictment was not the only error that occurred. Multiple errors followed the defective indictment. As a result of the defect in the indictment, the state's position that recklessness was not an element of the offense, and the court's rulings in favor of the state on the issue of the culpable mental state, the state did not argue or attempt to prove at trial that the appellant had acted recklessly, and the case was therefore submitted to the jury as a strict liability offense. In addition, the jury was not instructed that it was required to find that appellant acted recklessly. The jury's question to the court reflects the jury's confusion with the concept of intent in the instant case, and they questioned what level of criminal intent they had to find proven in order to convict appellant.
 {¶ 41} For these reasons, we find that the deficiency in the indictment so permeated the conduct of the trial that it could only be considered structural error.
 {¶ 42} Appellant's first assignment of error is well taken and is hereby sustained. *Page 13 
 {¶ 43} Having found the deficiency in the indictment to be structural error, the remaining assignments of error are moot.
 {¶ 44} The judgment of the Canton Municipal Court is hereby reversed. This case is remanded to that court for further proceedings according to law, consistent with this opinion.
Edwards, J., Hoffman, P.J., and Farmer, J., concur. *Page 14 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Canton Municipal Court is hereby reversed. This case is remanded to the that court for further proceedings according to law, consistent with this opinion. Costs assessed to appellee. *Page 1