DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of conviction and sentence entered by the Lucas County Court of Common Pleas after a jury found defendant-appellant, Nakia Witcher, guilty of abduction, a felony of the third degree. Appellant challenges that ruling through the following assignments of error:
 {¶ 2} "Assignment of Error I *Page 2 
 {¶ 3} "Witcher's sentence violated his constitutional rights because the trial court, in imposing R.C. 2929.14(B), make [sic] factual findings in determining that the shortest sentence would `demean the seriousness of the offense' and would `not adequately protect the public'
 {¶ 4} "Assignment of Error II
 {¶ 5} "Witcher's conviction was against the manifest weight of the evidence due to a lack of credible evidence and, as a result, a manifest miscarriage of justice occurred.
 {¶ 6} "Assignment of Error III
 {¶ 7} "The trial court erred by not granting Witcher's Rule 29 motion for judgment of acquittal because the state failed to prove beyond a reasonable doubt that the victim was removed from the place where she was found.
 {¶ 8} "Assignment of Error IV
 {¶ 9} "The trial court abused its discretion by prematurely providing a Howard [sic] instruction to the jury after only 2 hours of deliberation and before the jury advised the trial court it was deadlocked.
 {¶ 10} "Assignment of Error V
 {¶ 11} "Witcher was denied his constitutional rights to a fair trial due to the prosecutor who, even after an objection was sustained, persisted in trying to impugn Witcher's character with unsupported and irrelevant allegations of crack cocaine usage. And, by the state's vouching for the victim's testimony which prejudicially impacted the jury's deliberations." *Page 3 
 {¶ 12} On October 20, 2005, Witcher was indicted and charged with abduction in violation of R.C. 2905.02(A)(1) and (B). The indictment came after events that took place on September 15, 2005 in a Lucas County apartment complex.
 {¶ 13} The police apprehended appellant on October 21, 2005. They learned the location of his residence based on information obtained from the victim in this case, Dawn Baer. On January 9, 2006, the case proceeded to a jury trial at which witnesses provided the following conflicting testimony and evidence.
 {¶ 14} Dawn Baer was the first person to testify at trial concerning the events that occurred on September 15, 2005. She stated that on that date between 1:00 and 2:00 a.m., she was taking out her garbage. She testified that she felt safest taking her trash out at that time of day. After Baer deposited her trash in the dumpster, appellant came up to her and requested a light. She replied that she did not have a light and that he should ask another person in the lot. Baer then turned and began to walk back towards her apartment while appellant followed her in pursuit. Baer testified that appellant then grabbed her from behind. When Baer asked what he wanted he replied, "I want your hips." Appellant then threw her down onto the ground and dragged her approximately one to two feet while she kicked and screamed. Appellant then got on top of her and held her down while his face came within six inches of Baer's. Baer continued to kick and scream during the attack and the appellant eventually got up and ran away from the scene. Baer testified that her clothes ripped during the altercation and she suffered from scrapes on her elbow and lower back. Baer then drove to a local gas station in order to *Page 4 
contact the police. Officer Jeffrey Scott arrived at the station and took down her account of what occurred along with a description of the assailant. The officer followed Baer back to her apartment complex and searched the premises to no avail.
 {¶ 15} Officer Jeffrey Scott also testified about his interaction with Baer. On September 15, he arrived at a Sunoco gas station to investigate the alleged assault of Baer. Officer Scott testified that Baer appeared a little dirty and he was not sure if that was her normal appearance. She also appeared frightened and agitated when he arrived, "as if she had been attacked." Baer described her assailant as a six foot one inch tall 170 pound black male wearing black shorts and a black shirt. Officer Scott recorded that she had suffered from a scraped left elbow, but did not recall seeing any tears on her clothing or her presenting any portion of her clothing for him to examine. He also could not recall her mentioning that she had seen the assailant beforehand or that the assailant lived in her apartment complex. Baer did make allegations to Officer Scott that she had suffered similar attacks in the past while taking out her garbage.
 {¶ 16} Nakia Witcher provided a very different account of what occurred between himself and Baer on September 15. He testified that he had contact with Baer sometime between 8:30 and 9:00 p.m. while jogging. Witcher testified that he came around a corner and struck Baer causing her to fall to the ground. He tried to apologize to her and attempted to help her up by grabbing her arm but she responded by cursing at him and jerking her arm away. Witcher testified that he had no contact with Baer between the hours of 1:00 and 2:00 a.m. He said that he was probably asleep at that point because he *Page 5 
had to be at work at seven that morning. Witcher made it clear that he was not challenging that the attack occurred to Baer, only that he could not have been the attacker.
 {¶ 17} The testimony given at trial also shed light on certain characteristics of Baer and Witcher. Baer is disabled and has been unemployed for a short period. She suffers from both fibromyalgia and post-traumatic stress disorder. She is under the care of a psychiatrist who prescribes medication to her including Alprazolam. Witcher is a father of seven children and has worked at Arby's for two and a half to three years. He jogs in order to stay in shape for his participation in various basketball leagues. He stated that he spent a lot of time with his children at the apartment complex where both he and Baer reside. Witcher testified that he knew Baer lived three doors down from him and had often seen her picking up trash around the complex. He explained that she would not pass him and his children while going up and down the stairs at the complex. In addition, Witcher stated that Baer would cross the street to avoid walking past him and his fiancée. Baer claimed that she could not recall ever walking past appellant, seeing him with his children, or knowing or talking to his fiancée. She also testified that she frequently witnessed appellant smoking around the apartment complex. Appellant denied smoking at all in any form.
 {¶ 18} After considering all of the evidence, the jury found appellant guilty of abduction in violation of R.C. 2905.02(A)(1) and (B), a felony of the third degree. On January 12, 2006, the case proceeded to a sentencing hearing at which the trial court *Page 6 
imposed a sentence of three years incarceration. In imposing sentence, the court expressly found pursuant to R.C. 2929.14(B) that the shortest prison term would demean the seriousness of the offense. The court subsequently filed a judgment entry reflecting that conviction and sentence. It is from that judgment that appellant now appeals.
 {¶ 19} We will first address the third assignment of error raised by appellant challenging the trial court's denial of the Crim.R. 29 motion for judgment of acquittal. Appellant contends that the trial court erred by not granting the motion because the state failed to prove beyond a reasonable doubt that the victim was removed from the place where she was found. Therefore, appellant contends the state did not meet its burden of proof and the trial court should have granted the motion for acquittal.
 {¶ 20} Crim.R. 29(A) states that after the evidence on either side is closed, a court shall order an entry of a judgment of acquittal if the evidence is insufficient to sustain a conviction of such offense or offenses. Reviewing the denial of a Crim.R. 29(A) motion therefore requires an appellate court to use the same standard as is used to review a sufficiency of the evidence claim. State v. Carter (1995),72 Ohio St.3d 545, 553. The test is, viewing the evidence in a light most favorable to the prosecution, could any rational trier of fact have found the essential elements of the crime proven beyond a reasonable doubt. State v. Thompkins (1997), 78 Ohio St.3d 380, 390, Cook, J., concurring.
 {¶ 21} The elements of the crime of abduction as set forth in R.C.2905.02(A)(1) are that no person, without privilege to do so, shall knowingly, by force or threat, remove *Page 7 
another from the place where he or she is found. Appellant contends that no competent or credible evidence was brought forth to prove that he used force or threat to remove Baer from where she was found. The basis of appellant's argument is that Baer has a serious mental illness and therefore could not give competent testimony, and that the state failed to prove that appellant removed Baer from the place where she was found. These arguments are unpersuasive. First, it was the province of the jury in this case to determine the credibility of the witnesses. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The testimony illustrated that Baer does have some disabilities, but no evidence was brought forth that these disabilities prevented her from giving competent or credible answers. A reasonable jury could have found Baer's testimony to be more credible than that given by appellant despite her disabilities.
 {¶ 22} Appellant further asserts that the state failed to prove that appellant violated R.C. 2905.02(A)(1) by removing Baer from the place where she was found. This is also without merit. There is little case law regarding this element of the abduction offense. Nevertheless, the courts that have addressed the issue have held that R.C. 2905.02(A)(1) is violated when a victim is moved only a short distance from where she was found. State v. Winchester (Dec. 3, 1981), 10th Dist. No. 81AP-166. In addition, no evidence must be presented on the exact distance of the victim's movement as long as it is proven that the victim was removed from the place in which he or she was found. State v. Mason (Apr. 11, 2002), 10th Dist. No. 01AP-953. Moreover, the committee comment to R.C.2905.02 states that, "the removal need not be for a great distance." Consistent with this *Page 8 
comment, the Ohio Jury Instructions on abduction read that the removal need not "be for any specific distance, for any duration of time, or in any specific manner." 4 OJI 505.02(4). From the testimony given in this case, a reasonable jury could have determined that Baer had been removed from the place where she was found. Testimony from Baer established that she was thrown to the ground and dragged by appellant for one to two feet. The definition above states that for an abduction to occur, the removal of a person from the place he or she is found does not need to be for any specific distance. Accordingly, the jury could have concluded that the state proved this element of the offense of abduction.
 {¶ 23} For these reasons, viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable jury could have found beyond a reasonable doubt that appellant did remove Baer from the place where she was found in violation of R.C. 2905.02(A)(1). In addition, the disabilities from which Baer suffers did not affect her credibility, and, therefore, did not affect the sufficiency of the evidence. Accordingly, there was sufficient evidence to sustain the conviction of abduction, and the lower court did not err in denying the Crim.R. 29 motion for acquittal. The third assignment of error is not well-taken.
 {¶ 24} In his second assignment of error, appellant challenges his conviction on the ground that it was against the manifest weight of the evidence. Appellant contends this was due to a lack of credible evidence which resulted in a manifest miscarriage of justice. *Page 9 
 {¶ 25} It has been held by the Supreme Court of Ohio that the standards used in determining sufficiency of the evidence versus weight of the evidence arguments are "quantitatively and qualitatively different." Thompkins, supra at 386. Under a manifest-weight standard, an appellate court must sit as a "thirteenth juror" and may disagree with the fact-finder's resolution of the conflicting testimony. Id at 387. The appellate court, ?`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction.'" Id., quoting State v. Martin (1983), 20 Ohio App.3d 172,175.
 {¶ 26} Appellant contends that Baer did not have a "firm grasp on reality" during her testimony. For this reason, appellant argues that there was a lack of credibility with a key witness which caused a gross miscarriage of justice. We find this argument to be unpersuasive. Baer testified that she was taking her trash out during the early morning hours of September 15, 2005. During this time, a man who she later identified as appellant came up to her and asked for a light. She told him that she did not have a light and continued to her apartment. He followed her from behind and grabbed her stating that he "wanted her hips." At this point appellant threw her down to the ground and dragged her for one to two feet. Baer testified that appellant got on top of her and was *Page 10 
within six inches of her face. After about one minute appellant abruptly got up and ran from the scene. The attack caused Baer to suffer scrapes on her elbow and back along with tears on her clothing. The testimony given by Officer Scott verified the fact that Baer suffered from these injuries. Officer Scott also stated that Baer seemed agitated and frightened, "as if she had been attacked." Appellant further argues that Baer should have told Officer Scott the identity of the attacker since he lived at the same complex. However, it was established in the testimonies of both Baer and appellant that Baer was a person who was not interested in having contact with or knowing any other residents at the complex. Accordingly, it was understandable for the jury to believe that she did not know who appellant was or the location of his apartment at the time of the attack. Based on this evidence, it cannot be said that the jury clearly lost its way and created a manifest miscarriage of justice. It is the job of the jury to listen to all of the testimony and to determine the credibility of the witnesses. DeHass, supra. After hearing from all of the individuals involved in the incident, the jury came to a verdict and we cannot say that it was against the manifest weight of the evidence. The second assignment of error is therefore not well-taken.
 {¶ 27} In his fourth assignment of error, appellant challenges the use of the State v. Howard (1989), 42 Ohio St.3d 18, instruction by the trial court. Appellant argues that the trial court abused its discretion in providing the Howard instruction since the jury never indicated that it was deadlocked. Appellant contends that this coerced the jury into giving a guilty verdict and took away the possibility of a hung jury. *Page 11 
 {¶ 28} It is well settled that the failure to object to a jury instruction as required by Crim.R. 30 is a waiver of the issue on appeal. State v. Williams (1977), 51 Ohio St. 2d 112, 116-117. TheHoward instruction is to be given to a jury, "when a determination has been made that the jury is deadlocked in its decision." State v.Minnis (Feb. 11, 1992), 10th Dist. No. 91AP-844. The decision to provide the Howard instruction is within the sound discretion of the trial court and, therefore, will not be reversed absent an abuse of that discretion.State v. Ballew (Feb. 26, 1999), 1st Dist. No. C-980442. The standard for determining an abuse of discretion is more than a mere error of law or judgment; it implies that the court's decision is unreasonable, arbitrary, or unconscionable. Atkinson v. Internatl. Technegroup,Inc. (1995), 106 Ohio App. 3d 349, 357-358.
 {¶ 29} Appellant argues that the trial court abused its discretion when it gave the Howard instruction since the jury never indicated that it was deadlocked. We find this argument to be without merit. The trial court used its discretion in this case to determine that the jury was deadlocked and that it was time to provide them with the Howard
instruction. The trial court came to its conclusion based on a message relayed to it from the jury, which stated, "What happens/what is the procedure if we can't come to a unanimous decision (either way)?" The trial court found the jury to be deadlocked based on this statement. Appellant has failed to establish that this decision was unreasonable, arbitrary, or unconscionable. Furthermore, despite initial reservations, appellant agreed *Page 12 
that the court should give the jury the Howard instruction. Appellant has therefore waived his right to raise this issue on appeal. For these reasons, the fourth assignment of error is not well-taken.
 {¶ 30} In his fifth assignment of error, appellant claims that he lost his constitutional right to a fair trial due to prosecutorial misconduct. Appellant contends that misconduct occurred when the prosecutor continued to question Baer about Witcher smoking crack cocaine after a sustained objection. Appellant also argues that misconduct occurred during closing arguments when the prosecutor spent time vouching for his weak witness and told the jury that they were safe in the courtroom.
 {¶ 31} Generally, conduct of a prosecuting attorney at trial shall not be grounds for reversal unless the conduct deprived the defendant of a fair trial. State v. Apanovitch (1987), 33 Ohio St.3d 19, 24. An appellant is entitled to a new trial only when a prosecutor asks improper questions or makes improper remarks and those questions or remarks prejudice appellant. State v. Smith (1984), 14 Ohio St.3d 13,14. To determine if the alleged misconduct resulted in prejudice an appellate court should consider the following factors: "(1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant." State v. Braxton
(1995), 102 Ohio App.3d 28, 41. The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. Smith v. Phillips (1982),455 U.S. 209, 291. *Page 13 
 {¶ 32} When a defendant has failed to object, review of the alleged improper statements is discretionary and limited to plain error only.State v. Griffin (Nov. 17, 2000), 6th Dist. No. L-98-1215. This court has held that "notice of plain error must be taken with the utmost caution, under exceptional circumstances, and only in order to prevent a manifest miscarriage of justice. In order to prevail on a claim governed by the plain error standard, appellant must demonstrate that the outcome of his trial would clearly have been different but for the errors he alleges. Thus, alleged prosecutorial misconduct constitutes plain error only if it is clear that appellant would not have been convicted in the absence of the improper comments. In cases such as this, the plain error standard generally presents `an almost insurmountable obstacle to reversal.'" Id.
 {¶ 33} Appellant first argues that the prosecutor committed misconduct in his continued questioning of witnesses about Witcher smoking from a metal pipe. Defense counsel objected when the prosecutor first asked Baer about Witcher smoking. This objection dealt with him smoking crack cocaine, however, and not about him smoking out of a metal pipe. The court sustained the objection and instructed the jury to disregard the question. The prosecutor then asked Baer to describe the item from which she saw appellant smoking. She described a metal rod in which "you must put something at the end of it and light it." Defense counsel did not object. Subsequently, the defense objected when the prosecutor asked Witcher himself about smoking from a metal pipe. The prosecutor explained to the judge that the original objection dealt with Witcher smoking crack cocaine, not smoking out of a metal pipe. The judge allowed the prosecutor to *Page 14 
rephrase the question to ask Witcher about the earlier testimony dealing with his smoking from a metal pipe. Upon review, we cannot say that the comments in question denied Witcher a fair trial. The court struck the testimony dealing with Witcher smoking crack cocaine after objection. Defense counsel did not object to the questioning dealing with Witcher smoking from a metal pipe until he was on the stand. The judge allowed the prosecutor to question Witcher about smoking from a metal pipe. This question alone did not deprive appellant of a fair trial. For these reasons, we find this argument to be without merit.
 {¶ 34} Appellant next argues that prosecutorial misconduct occurred during closing arguments when the prosecution made comments regarding Baer's credibility. These comments must rise to the level of plain error since the defense did not object to them during the closing arguments. The prosecutor made the comments in order to refute questioning made by the defense during trial. The prosecutor did not give his personal opinion about Baer's credibility. Instead, he commented about Baer picking up trash and wearing bandages outside of her clothing in order to give the jury perspective on her testimony. These comments did not create a manifest miscarriage of justice, and the outcome of the trial would not have been different if the comments had not been made. We therefore find this argument to be unpersuasive.
 {¶ 35} In his last argument concerning prosecutorial misconduct, appellant contends that the prosecutor should not have told the jury that they were "safe in the courtroom" and that they should not be "scared to do the right thing." Defense did not *Page 15 
object to these comments during trial so they must rise to the level of plain error for reversal. A review of the transcript reveals that the defense has taken these comments out of context. The prosecution was attempting to calm the jury and explain their duties rather than forcing his opinions onto them or injecting fear into their deliberations. Appellant fails to demonstrate how these comments influenced the outcome of his trial. For all of these reasons, the fifth assignment of error is not well-taken.
 {¶ 36} Finally, in his first assignment of error, appellant challenges the sentence imposed upon him by the trial court. In particular, appellant asserts that the trial court violated his constitutional rights when it concluded that the shortest prison term would demean the seriousness of the offense and would not adequately protect the public.
 {¶ 37} Upon review, we find that this issue is controlled by the Supreme Court of Ohio's decision in State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856. In Foster, the court held that R.C. 2929.14(B) violates the Sixth Amendment to the United States Constitution, pursuant toBlakely v. Washington (2004), 542 U.S. 296, and Apprendi v. NewJersey (2000), 530 U.S. 466. In the present case, the lower court expressly relied on that unconstitutional statute in imposing sentence and, as such, the sentence is void and must be vacated. Foster, supra at ¶ 103-104. See, also, State v. Finn, 6th Dist. No. L-05-1019,2006-Ohio-1983; State v. Harris, 6th Dist. No. E-04-034, 2006-Ohio-1396. Accordingly, the first assignment of error is well-taken.
 {¶ 38} On consideration whereof, we find that appellant was not prejudiced or prevented from having a fair trial. The trial court did err, however, in sentencing *Page 16 
appellant. The judgment of the Lucas County Court of Common Pleas is affirmed, in part, and reversed, in part, and this case is remanded to that court for resentencing. Pursuant to App.R. 24 the parties are ordered to share equally the costs of this appeal. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Judge George M. Glasser, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio. *Page 1