DECISION AND JUDGMENT
{¶ 1} Appellant, William L. Pinkelton, III, appeals an October 17, 2007 judgment, of the Ottawa County Court of Common Pleas, convicting him of the offenses of aggravated robbery (a violation of R.C. 2911.01(A)(3) and a first degree felony), of aggravated burglary (a violation of R.C. 2911.11(A)(1) and a first degree felony), of felonious assault (a violation of R.C. 2903.11(A)(1) and a second degree felony), and of *Page 2 
assault (a violation of R.C. 2903.13(A) and a first degree misdemeanor). The convictions were rendered pursuant to jury verdicts in a two day jury trial in August 2007.
 {¶ 2} Pinkelton was acquitted of an additional charge of attempted rape, a violation of R.C. 2907.02(A)(2) and second degree felony. The trial court granted Pinkelton's Crim. R. 29 motion for acquittal on the charge at trial, before jury deliberations.
 {¶ 3} Pinkelton assigns four errors on appeal:
 {¶ 4} "I. The jury's verdict was against the manifest weight of the evidence.
 {¶ 5} "II. The jury's verdict is erroneous because it is based upon insufficient evidence.
 {¶ 6} "III. The trial court erred in denying the appellant's motion for a new trial and/or judgment of acquittal.
 {¶ 7} "IV. The trial court erred in permitting the state over appellant's objection to argue in closing argument about the appellant's post arrest silence."
 {¶ 8} Certain facts are undisputed. Christine Miller, Sean Moir, Brandon Beckman and Kerri Chandler met Pinkelton at a local bar in Port Clinton, Ohio on December 12, 2006. At approximately 2-2:15 a.m, Miller, Moir and Beckman left the bar and went to Beckman's house. Pinkelton and Tarrence Scott met them there. The group drank beer, listened to music, and talked in Beckman's garage.
 {¶ 9} Later, Pinkelton, Beckman, and Scott left Beckman's house and went to Jeff Stevens' apartment. They arrived at the apartment around 4:00 a.m. Pinkelton and *Page 3 
Terrance Scott both testified at trial that Beckman kicked in the door to the Stevens' apartment upon their arrival and immediately fled. According to Pinkelton, Stevens opened the door afterwards and saw Beckman running away. Pinkelton identified Beckman to Stevens by name, as the person who had kicked in the door.
 {¶ 10} At approximately 6:30 a.m. Tarah Haynes drove Pinkelton, Stevens, Scott, and Scott's brother, Elisha Cannon, back to Beckman's house. It is at this time that Sean Moir and Christine Miller were physically attacked. The testimony at trial on the assaults conflicted.
 {¶ 11} Moir testified that he was asleep and awakened by the assault upon him. He did not see his attackers and that he was unable to identify them from the voices that he heard during the assault.
 {¶ 12} Pinkelton testified that he entered the residence after Scott and Cannon and that he assaulted no one. He testified that it was Scott and Cannon who assaulted Moir and Miller and that he attempted to pull Cannon away from Moir and to get Cannon to leave.
 {¶ 13} Christine Miller testified that she witnessed Pinkelton, Scott, and Cannon each assault Moir. She also testified that both Pinkelton and Scott struck her. She claimed Pinkelton punched her on the collar bone several times and once in the face. Scott struck her once.
 {¶ 14} Both Scott and Cannon testified against Pinkelton at trial pursuant to plea agreements that were disclosed to the jury. Cannon testified that Scott is his foster *Page 4 
brother and that at approximately 6:00 a.m. on the day of the incident Scott woke him up and wanted him to come with him to a fight. Cannon accompanied Scott, Pinkelton, and Stevens to Beckman's house.
 {¶ 15} Cannon testified that they entered the house after kicking in a side door. Once inside, Pinkelton pointed Moir out to Cannon. Moir was sleeping on the floor. Cannon woke Moir up and started punching him. Cannon knocked Moir down. Cannon also testified that he, Scott and Pinkelton each punched Moir and Moir fell to the ground. They then began "stomping" on (kicking) Moir. Moir kept trying to get up. Every time he got up, one of them would kick or punch him again. Cannon testified that he also saw Scott and Pinkelton hit Miller.
 {¶ 16} Scott testified that it was Pinkelton who kicked in the side door to Beckman's house and that Pinkelton and Cannon both rushed in afterwards. According to Scott, Pinkelton then pointed out Moir to Cannon and Cannon started punching Moir. He testified that later Pinkelton, Cannon, and he began "stomping" on Moir with their feet. According to Scott, Pinkelton and Cannon kept hitting Moir and telling him to stay down. Moir kept standing up. The assault stopped when Moir stayed on the floor.
 {¶ 17} Scott testified that, during the assault against Moir, a girl (Miller) attempted to run out. Scott tried to stop her and she swung at him. He swung back. When she hit the couch, Pinkelton ran over and also struck her. Pinkelton later told Scott to shut the girl up. Scott testified that he then punched Miller again.
 {¶ 18} Stevens testified that he did not enter the Beckman house and did not witness the assaults. No one testified that Stevens assaulted anyone. *Page 5 
 {¶ 19} Sean Moir testified that he permanently lost two of his front teeth during the assault. As a result he wears a partial denture. A photograph depicting his injuries was in evidence at trial. According to Moir, the photograph depicts a "black eye, fat lips and busted up nose" in addition to a swollen ear from the assault.
 {¶ 20} Chief Rogers of the Catawba Island Police Department took Pinkelton into custody on the day of the assault. He transported Pinkelton to the police department, advised him of his rights and took his statement. Appellant told Rogers that he did not return to the Beckman house after Beckman kicked in the door to the Stevens' apartment. This meant that Pinkelton would not have been present when the assaults on Moir and Miller occurred.
 {¶ 21} Rogers saw what appeared to be blood spatter on appellant's shoes. He took them, bagged, and tagged them for further forensic inspection. At trial, a forensic scientist for the Ohio Bureau of Criminal Identification and Investigation testified that she had conducted a DNA analysis of the shoe stains. There were four stains on the left shoe and one on the right. Three of the stains on the left shoe disclosed a mixture of DNA sources including Sean Moir. The remaining stain on each shoe had a single source — a DNA profile consistent with Sean Moir.
 {¶ 22} Rogers also took photographs depicting Christine Miller's injuries on the morning of the incident. The photographs were in evidence at trial. Chief Rogers testified that the photographs accurately depicted abrasions and marks to Miller after the assault. *Page 6 
 Manifest Weight of the Evidence {¶ 23} Pinkelton argues under the first assignment of error that the jury verdicts were against the manifest weight of the evidence on all counts for which he was convicted — aggravated robbery, aggravated burglary, felonious assault, and assault. He claims that no reasonable fact finder could find the testimony of Christine Miller, Tarrence Scott, and Elisha Cannon to be sufficiently credible to discredit Pinkelton's own testimony as to his innocence on all charges.
 {¶ 24} In a challenge to a conviction that it is against the manifest weight of the evidence, an appellate court acts as a "thirteenth juror," reweighs the evidence, and may disagree with a factfinder's conclusions on conflicting testimony. State v. Thompkins, 78 Ohio St.3d 380, 387;State v. Lee, 6th Dist. No. L-06-1384, 2008-Ohio-253, ¶ 12. "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and new trial ordered." Thompkins at 387, quoting with approval, State v. Martin (1983), 20 Ohio App.3d 172, 175. Reversals on this ground are granted "only in the exceptional case in which the evidence weighs heavily against conviction." Id.
 {¶ 25} We have reviewed the entire record. We agree that Miller, Cannon and Scott each were subject to significant impeachment at trial. Cannon and Scott admittedly participated in the assaults on Moir and Miller. Their testimony had been secured under a *Page 7 
plea bargain under which felony charges against them were dropped in exchange for a plea to a misdemeanor charge and their testimony against appellant.
 {¶ 26} There was a prior incident, years before, where Miller falsely claimed to have witnessed another altercation involving Pinkelton. When police became involved through their investigation into her claim, Miller immediately informed them that her statement was false and that she had not been present at the time of the incident.
 {¶ 27} This case presented significant issues of credibility for the jury to resolve in order to weigh their testimony. However, appellant's own testimony was also of questionable weight. Appellant initially denied to police that he was even present at the Beckman home at the time of the assaults. The police secured forensic evidence that established that Pinkelton had been present when Moir was assaulted. The evidence was DNA evidence of Moir's blood on appellant's shoes. The forensic evidence was presented through expert testimony at trial. Appellant, admitted at trial that his statement to police was false. He had been, in fact, present at Beckman's when the assaults occurred.
 {¶ 28} Based upon our review of the record, we conclude that the evidence does not weigh heavily against conviction and that there has been no clear miscarriage of justice in the convictions of appellant. Appellant's convictions were not against the weight of the evidence. We conclude that Assignment of Error No. I is not well-taken.
 Sufficiency of the Evidence {¶ 29} Under Assignment of Error No. II, appellant challenges the sufficiency of the evidence to support the convictions. A challenge to a conviction based upon a claim *Page 8 
of insufficiency of the evidence presents a question of law on whether the evidence at trial is legally adequate to support a jury verdict on all elements of a crime. State v. Thompkins at 386. An appellate court does not weigh credibility when reviewing the sufficiency of evidence to support a verdict:
 {¶ 30} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979],443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)" State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of syllabus.
 {¶ 31} Appellant's arguments under Assignment of Error No. II are directed at the sufficiency of evidence to support convictions of the crimes of aggravated robbery, felonious assault, and aggravated burglary.
 {¶ 32} Appellant was convicted of aggravated robbery, a violation of R.C. 2911.01(A)(3). The statute provides:
 {¶ 33} "2911.01 Aggravated robbery
 {¶ 34} "(A) No person, in attempting or committing a theftoffense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 35} "* * * *Page 9 
 {¶ 36} "(3) Inflict, or attempt to inflict, serious physical harm on another." (Emphasis added.)
 {¶ 37} Appellant claims under this assignment of error that evidence was insufficient to establish that serious physical harm was inflicted "while a theft offense was being committed or in fleeing immediately after the theft offense." However, "the aggravated robbery statute does not require the defendant to actually cause serious physical harm. It is enough for aggravated robbery if the defendant attempts to cause serious physical harm. See State v. Sharp, 8th Dist. No. 87709, 2006-Ohio-6413."State v. Walker, 6th Dist. No. L-07-1156, 2008-Ohio-4614, ¶ 50.
 {¶ 38} The state has contended that serious physical harm to Moir occurred during the attempted theft of the large television and in fleeing with the theft of the small television. Christine Miller testified that "I looked up and I saw three guys right away, two of them were kicking Sean and throwing him around, and one was pulling the TV away from the wall." She identified the two kicking Sean Moir and throwing him around as Pinkelton and Cannon. She identified the third, who was pulling the television from the wall, as Scott.
 {¶ 39} Later, Cannon told Pinkelton and Scott to leave the big television and take the other: "My brother and Pete tried to grab the big TV. I told them just to leave it alone, take the other one, and me and Pete grabbed it."
 {¶ 40} After reviewing the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found beyond a reasonable doubt that *Page 10 
Pinkelton attempted to cause serious physical harm to Moir in attempting the theft of the big television and committing the theft of the smaller one. Appellant's Assignment of Error No. II is not well-taken on the claim of insufficiency of the evidence to support a conviction of aggravated robbery.
 {¶ 41} Under the same assignment of error, appellant next argues that the evidence at trial was also insufficient to support his conviction for felonious assault under R.C. 2903.11(A)(1). Unlike aggravated robbery, the offense of felonious assault requires evidence that the defendant's conduct caused serious physical harm. R.C. 2903.11(A)(1) provides:
 {¶ 42} "2903.11 Felonious assault
 {¶ 43} "(A) No person shall knowingly do either of the following:
 {¶ 44} "(1) Cause serious physical harm to another or to another's unborn;"
 {¶ 45} As to the felonious assault conviction, appellant does not argue the timing of the injury. Rather, he claims the injuries to Sean Moir failed to meet the standard of serious physical harm as defined under R.C. 2901.01(A)(5).
 {¶ 46} No medical records were placed in evidence at trial concerning Moir's injuries. Moir admitted that he was not kept overnight in the hospital after he sought treatment on the day of the assault. While Moir admitted that on the day after his injuries he could physically do his daily activities, but stated that nevertheless, at that time, he had trouble speaking due to injuries to his teeth and could not eat. *Page 11 
 {¶ 47} The state has contended that the evidence was sufficient to prove that Moir suffered serious physical harm under R.C. 2901.01(A)(5)(c) and (d). R.C. 2901.01(A)(5) (c) and (d) provide:
 {¶ 48} "(A) As used in the Revised Code:
 {¶ 49} "* * *
 {¶ 50} "(5) `Serious physical harm to persons' means any of the following:
 {¶ 51} "* * *
 {¶ 52} "(c) any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 {¶ 53} "(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;"
 {¶ 54} Construing the evidence most favorably to the state, we conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant caused serious physical harm to Moir.
 {¶ 55} Evidence that the victim suffered injuries that required him to seek medical care has been held sufficient to support the element of serious physical harm under R.C. 2901.01(A)(5). State v. Lee, 6th Dist. No. L-06-1384, 2008-Ohio-253, ¶ 30. The Eighth District Court of Appeals has concluded that where a victim is punched in the mouth and loses teeth as a result of the assault, he has suffered "physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement" and, therefore, serious physical harm. State v.Grubach (Dec. 9, 1999), 8th Dist. No. 75022; State v. Davis, (May 24, 1984), 8th Dist. No. 47622. *Page 12 
 {¶ 56} Sean Moir had two front teeth knocked out by the assault. He also had a black eye, fat lips, a busted up nose and a swollen ear. He was repeatedly punched and kicked. We conclude that the evidence, construed most favorably to the state, supports a conclusion that a reasonable trier of fact would find that Moir suffered permanent physical disfigurement or temporary serious disfigurement as defined under R.C. 2901.01(A)(5)(d) and, therefore, serious physical harm as required to support a conviction for felonious assault. Assignment of Error No. II is not well-taken to the extent it claims that there was insufficient evidence that Sean Moir suffered serious personal harm to support a conviction for felonious assault.
 {¶ 57} The final challenge to the sufficiency of evidence under Assignment of Error No. II concerns the conviction for aggravated burglary. Appellant argues that there is insufficient evidence to support the conviction for aggravated burglary because there was no proof at trial that the defendant went to the Beckman residence with the purpose to commit a criminal offense.
 {¶ 58} The elements to the offense of aggravated burglary are set forth in R.C. 2911.11. The statute provides in relevant part:
 {¶ 59} "(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with the purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply: *Page 13 
 {¶ 60} "(1) The offender inflicts, or attempts or threatens to inflict physical harm on another * * *;"
 {¶ 61} The term "trespass" as used in R.C. 2911.11 means "a wrongful entry on real property." State v. Terry, 6th Dist. No. L-06-1298,2007-Ohio-4088, ¶ 20. Viewing the evidence most favorably to the prosecution, appellant wrongfully entered the Beckman house by force. Scott testified that Pinkelton knocked down the side door to the Beckman house and rushed in with Cannon.
 {¶ 62} It is undisputed that the house was occupied — Moir, Miller, and others were in the house at the time. There was evidence of an intent to commit a criminal assault upon entry. Both Scott and Cannon testified that Pinkelton pointed out Moir to Cannon as they entered and that Cannon immediately started punching Moir. It is undisputed that Pinkelton, Cannon, Scott, and Stevens traveled together in the same vehicle from Stevens' apartment to Beckman's house. Cannon testified that they talked on the way about fighting. Finally, Miller, Cannon and Scott testified that Pinkelton inflicted injuries on both Moir and Miller.
 {¶ 63} Construing the evidence most favorably to the prosecution, we conclude that there was sufficient evidence for a reasonable trier of fact to conclude beyond a reasonable doubt to find the existence of the elements of aggravated burglary against appellant. Appellant's Assignment of Error No. II is not well-taken on the remaining claim that the evidence at trial was insufficient to support a conviction of aggravated burglary. *Page 14 
 {¶ 64} Under Assignment of Error No. III, appellant argues that the trial court erred by denying his motion for a new trial and/or judgment of acquittal. An appellate court reviews a denial of a Crim. R. 29 motion for an acquittal under the same standard used to determine whether a verdict is supported by sufficient evidence. State v. Carter (1995),72 Ohio St.3d 545, 553; State v. Witcher, 6th Dist. No. L-06-1039,2007-Ohio-3960, ¶ 20. We have previously considered and rejected appellant's claims that the evidence is insufficient to support the convictions in this case. Accordingly, we find Assignment of Error No. III not well-taken.
 {¶ 65} Under Assignment of Error No. IV, appellant claims that the trial court erred in permitting, over objection, comment by the prosecutor in closing argument about appellant's post arrest silence.
 {¶ 66} Here, appellant was arrested and informed of his rights. Afterwards he made a statement to police and later also testified at trial. It is undisputed that he told police that he had not returned to Beckman's house after Beckman kicked in the door to Stevens' apartment. He admitted at trial that his earlier statement to police was false and that he had in fact returned to the house and been present when the assaults on Moir and Miller occurred. He continued his claim that he was innocent of all charges.
 {¶ 67} Pinkelton testified at trial. During direct examination, his counsel raised the fact that Pinkelton had talked to Chief Rogers concerning the incident but had not told Rogers his testimony at trial:
 {¶ 68} By Mr. Stoll: *Page 15 
 {¶ 69} "Q. Is it fair today to say that your testimony, that you didn't tell this, your testimony today, to Chief Rogers when he firststarted talking to you?
 {¶ 70} "A. Absolutely." (Emphasis added.)
 {¶ 71} Later, in cross-examination, the prosecutor inquired as to the differences between what he had told law enforcement and his testimony at trial:
 {¶ 72} By Ms. Croy:
 {¶ 73} "Q. Did you get questioned about this by law enforcement, about that second trip?
 {¶ 74} "A. Yes, I did.
 {¶ 75} "Q. You denied even going out there, didn't you?
 {¶ 76} "A. At the time, yes.
 {¶ 77} "Q. Today is the first time we have heard that correct? You have never told law enforcement that you decided you had gone out there that second time?
 {¶ 78} "A. I wasn't given the opportunity.
 {¶ 79} "Q. Do you have — you know where the police station is, you had plenty of opportunity between then and now, correct?
 {¶ 80} "A. Correct. The way it was being investigated-
 {¶ 81} "Q. I didn't ask a question, so you have to wait until there is a question."
 {¶ 82} Appellant has not claimed, either in the trial court or in this appeal, that the state's cross-examination of him was improper. He has objected both at trial on appeal solely to a comment on the evidence by the prosecutor during her closing argument:
 {¶ 83} By Ms. Croy: *Page 16 
 {¶ 84} "The Defendant told you he went to Beckman's that second time, to Brandon house that second time, he told you that yesterday.
 {¶ 85} "And then he had to admit that he had lied about it previously. He never told Chief Rogers that he went that second time. He said he didn't go that second time. He wasn't anywhere around there. He spent the night at Raven's house. He didn't go.
 {¶ 86} "He said he never had the opportunity to report that from the time of December to August. Right now. Never had the time to report that."
 {¶ 87} By Mr. Stoll:
 {¶ 88} "Your Honor, I apologize. I normally don't object to things like that, but given the nature of it, I am going to have to object. He was charged right away and this is on advice of counsel."
 {¶ 89} Under the decision of the United States Supreme Court inDoyle v. Ohio (1976), 426 U.S. 610, 618-19, a prosecutor may not use a defendant's post arrest and post Miranda silence for impeachment.State v. Saunders (1994), 98 Ohio App.3d 355, 359; State v. Vance, 5th Dist. No. 2007-COA-035, 2008-Ohio-4763, ¶ 41-42. The restriction, however, does not preclude impeachment of a defendant at trial through use of his voluntary statement to police, made after notice ofMiranda rights. E.g. Anderson v. Charles (1980), 447 U.S. 404, 408;State v. Sands, 11th Dist. No. 2007-L-003, 2008-Ohio-6981, ¶ 168-178;State v. Burg, 2d Dist. No. 04CA94, 2005-Ohio-3666, ¶ 65-67; State v.Pettrey (Oct. 23, 2000), 5th Dist. No. 99CA277. "Doyle bars the use against a criminal defendant of silence maintained after receipt of governmental assurances. But *Page 17 Doyle does not apply to cross-examination that merely inquires into prior inconsistent statements." Anderson v. Charles at 408.
 {¶ 90} In United States v. Robinson (1988), 485 U.S. 25, 33-34, the United States Supreme Court also recognized that the Fifth Amendment prohibition against unfair use of the defendant's silence does not prevent a prosecutor from making a fair response to claims of the defendant or his attorney at trial. State v. Vance at ¶ 44-46; State v.Exum, 10th Dist. No. 05AP-894, 2007-Ohio-2648, ¶ 40.
 {¶ 91} In Robinson, the defendant did not testify. His attorney argued that the government had "unfairly denied" the defendant the "opportunity to explain his actions." United States v. Robinson at 27. In response, the prosecutor argued that the defendant "could have taken the stand and explained it to you, anything he wanted to." Id. at 28. The United States Supreme Court held that the right against self-incrimination under the Fifth Amendment was not violated by the comment:
 {¶ 92} "The broad dicta in Griffin [Griffin v. California (1965),380 U.S. 609] to the effect that the Fifth Amendment `forbids * * * comment by the prosecution on the accused's silence,' 380 U.S., at 615,85 S.Ct. at 1233, must be taken in the light of the facts of that case. It is one thing to hold, as we did in Griffin, that the prosecutor may not treat a defendant's exercise of his right to remain silent at trial as substantive evidence of guilt; it is quite another to urge, as defendant does here, that the same reasoning would prohibit the prosecutor from fairly responding to an argument of the defendant by adverting to that silence. There may be some `cost' to the defendant in having remained *Page 18 
silent in each situation, but we decline to expand Griffin to preclude a fair response by the prosecutor in situations such as the present one." Id. at 869-870.
 {¶ 93} Considering the facts of this case, here, appellant voluntarily spoke to police after being advised of his rights. He also voluntarily testified at trial. On direct examination appellant testified he had not told Chief Rogers everything when Rogers "first started talking" to him. The questioning on direct left an implication that there may have been more than one conversation with Rogers. Cross-examination clarified that he never stated that he had returned to Beckman's house in any conversation with police.
 {¶ 94} On cross-examination, appellant was asked to admit that he had "denied even going to Beckman's." He responded: "I wasn't given the opportunity." In our view, the statement by the prosecutor in closing argument as to opportunities available to appellant to correct his false statement to police before trial, was in fair response to appellant's claims at trial and permitted under United States v. Robinson analysis. We therefore find appellant's Assignment of Error No. IV not well-taken.
 {¶ 95} On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Ottawa County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Ottawa County.
 JUDGMENT AFFIRMED. *Page 19 
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, J., William J. Skow, P.J., CONCUR. *Page 1