[Cite as *State v. Sax*, 2015-Ohio-77.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
HURON COUNTY

State of Ohio                                   Court of Appeals No. H-13-026

    Appellee                              Trial Court No. CRI-2013-0199

v.

Jeremy M. Sax                              **DECISION AND JUDGMENT**

    Appellant                             Decided:  January 9, 2015

* * * * *

Russell V. Leffler, Huron County Prosecuting Attorney, for appellee.

Sarah A. Nation, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Defendant-appellant, Jeremy Sax, appeals the October 18, 2013 judgment of the Huron County Court of Common Pleas which, following a jury trial convicting him on one count each of robbery, aggravated burglary, and tampering with evidence, sentenced appellant to a total of 12 years of imprisonment.  Because we find that the verdicts were supported by sufficient evidence, we affirm.

{¶ 2} On April 12, 2013, a four-count indictment was filed charging appellant with robbery, aggravated burglary, tampering with evidence, and possession of drugs. The charges stemmed from the March 1, 2013 robbery and beating of the victim, Larry Youngless. Appellant entered not guilty pleas.

{¶ 3} On October 2, 2013, the case proceeded to a jury trial and the following evidence was presented. Treva Campbell, appellant's half-sister, testified that on March 1, 2013, she was living with appellant, her three children, her boyfriend, Larry Thornsberry, Brittany Fernekees and her infant son. Campbell testified that she was aware that appellant, Thornsberry, and Fernekees were addicted to heroin because they were all acting differently.

{¶ 4} Campbell testified that on March 1, 2013, she was preparing to go to a drugstore in Norwalk, Ohio, when the three, without elaborating, asked her to stop by a home. Campbell testified that previously the three discussed how they could get more heroin from the victim which included some deal involving a computer laptop. At the victim's home, Brittany, the victim's ex-girlfriend, went into the home with her cell phone on speakerphone so the males could monitor the negotiations. Campbell testified that appellant and Thornsberry eventually exited the vehicle and went in to the home. Campbell stated that they returned a few minutes later and that they were in a hurry.

{¶ 5} Campbell testified that she wanted to get to the drugstore before it closed but that they had her drive down a back road and slow down. Campbell stated that she saw appellant throw a gun out of the window. According to Campbell she asked Thornsberry

2.

what had happened and he told her not to worry about it. Campbell said that when they got to the drugstore she observed that they had money in a sock. Campbell also observed drugs. Campbell testified that approximately one hour after they returned home, the police arrived at her home.

{¶ 6} During cross examination, Campbell admitted that she had been criminally charged and had entered a plea in relation to the incident. Campbell stated that she entered a plea of guilty to tampering with evidence and that other charges had been dismissed. She denied that she was promised any deal in her case in exchange for her testimony.

{¶ 7} Larry Thornsberry testified next. Thornsberry stated that he entered guilty pleas to tampering with evidence and burglary. Thornsberry testified that he met appellant in 2005 or 2006 while they were in jail. Thornsberry stated on March 1, 2013, he, appellant and Fernekees all lived in the same house and were addicted to heroin. He further indicated that he and appellant had been discussing a plan to rob the victim of his heroin. Thornsberry identified an air pistol that had been modified to look like a real gun (the orange tip had been removed.) He stated that he did not know that appellant had brought the weapon with him to the victim's house.

{¶ 8} On that day, Thornsberry stated that Fernekees let them into the victim's house but that the victim wanted them out. Thornsberry stated that they then used force to rob the victim of his money and heroin. Specifically, Thornsberry testified that he got the victim in a "choke hold" and that appellant hit him in the head with the gun.

3.

{¶ 9} After leaving the victim's house, Thornsberry testified that they slowed down by a creek and appellant threw the gun out of the window. Once home, Thornsberry stated that appellant and Fernekees split the heroin with him which totaled about "21 or 22" balloons; he immediately began shooting the drugs. At appellant's request, Thornsberry hit appellant several times to fabricate a story about an altercation in case the police became involved.

{¶ 10} Thornsberry admitted that he gave varying statements to police in order to avoid criminal charges. Thornsberry further agreed that he was initially charged with tampering with evidence, robbery, burglary, and possession of drugs but that through an agreement with the state he entered a plea to one count of tampering with evidence.

{¶ 11} Huron County Sheriff's Deputies, Jeff Kerber and Todd Corbin, testified that following the incident they were dispatched to Thornsberry's home. Deputy Kerber stated that he observed six or seven small balloons containing what he suspected to be heroin in the bathroom. Kerber clarified that prior to entering the house, looking in the exterior window, he saw both appellant and Thornsberry go in and out of the bathroom.

{¶ 12} According to Deputy Corbin, appellant stated that he and the victim fought because the victim owed appellant money. Corbin also identified appellant as the individual sitting behind the defendant's table.

{¶ 13} Detective Sergeant Josh Querin testified that Thornsberry informed him that the weapon involved was not a handgun; it was a BB pistol with the red tip removed and which had been discarded. He was also informed that it was wrapped in a sock. According to Detective Querin, Thornsberry accompanied them around back roads in an attempt to locate the weapon. Fernekees and Campbell were able to provide a more accurate location and the weapon was found after several hours of searching.

{¶ 14} Sheriff's Deputy and shift supervisor Charlton Summers testified that when the hospital called to report the possible assault he informed them to have the victim come to the station to make a report. The victim arrived approximately one hour later and was interviewed and his injuries were photographed. According to Summers, two of the names the victim provided, Casper and Wendell, were "monikers." Deputy Summers stated that appellant was known as Casper and Thornsberry was known as Wendell.

{¶ 15} Deputy Summers interviewed appellant who stated that they were at the victim's house and that Fernekees went in to get her laptop and pay $40 that she owed him. She was also going to try and purchase drugs. Fernekees put her phone on speaker so appellant could monitor the situation. Appellant stated that the victim was making "passes" at her so he ran into the home and a fistfight ensued. Appellant did not state that he had a weapon.

{¶ 16} Steve Shupp of the Huron County Sheriff's office testified that on March 2, 2013, he received a call from the hospital regarding a possible assault. Deputy Shupp

5.

went to the home where the alleged incident to place and spoke with a juvenile witness. After learning the identities of the alleged perpetrators, they proceeded to Thornberry's residence. Shupp then identified appellant in the courtroom.

{¶ 17} The juvenile referred to by Shupp, D.H., testified that at the time of the incident he was 16 and living with his great-aunt; the victim resided there as well. D.H. stated that on the night of the incident he was upstairs at the home when he heard someone burst in and say get down on the ground. D.H. went to the top of the stairs and observed Fernekees, who he knew, and "some kid" hitting the victim in the head with a gun. Another man was holding the victim. D.H. could not identify appellant in court, but stated that there was talk that his nickname was Casper. After the gun was pointed at him he went back upstairs.

{¶ 18} After the close of the state's case, appellant's counsel moved for an acquittal as to the possession of heroin charge. Counsel argued that the substance was never tested. Counsel further argued that the state failed to prove appellant's identity as the perpetrator of the crimes charged. The court granted the motion as to the possession charge and denied it as to the remaining charges. The jury returned guilty verdicts as to the counts of aggravated robbery, burglary, and tampering with evidence.

{¶ 19} On October 18, 2013, appellant was sentenced and this appeal followed. Appellant raises two assignments of error for our review:

I. The trial court erred in denying appellant's Rule 29 motion to acquit.

6.

II. There was insufficient evidence to find appellant guilty beyond a reasonable doubt.

{¶ 20} We will jointly address appellant's assignments of error. Appellant first argues that the trial court erred in failing to grant appellant's motion for an acquittal at trial due to insufficiency of the evidence to support a conviction. Such a motion is made under Crim.R. 29(A) and is treated on appeal under the same standard that is applied to claims challenging the sufficiency of the evidence to support a conviction. *State v. Witcher,* 6th Dist. Lucas No. L-06-1039, 2007-Ohio-3960, ¶ 20.

{¶ 21} A challenge to a conviction based upon a claim of insufficiency of the evidence presents a question of law on whether the evidence at trial is legally adequate to support a jury verdict on all elements of a crime. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). An appellate court does not weigh credibility when reviewing the sufficiency of evidence to support a verdict. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. A reviewing court considers whether the evidence at trial "if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

7.

{¶ 22} Appellant contends that because appellant's identity as the perpetrator was not established during trial, he could not have been convicted of the charges. As recently noted by the Supreme Court of Ohio "[l]ike any fact, the state can prove the identity of the accused by 'circumstantial' or 'direct' evidence." *State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, 19 N.E.3d 888, ¶ 15. The court further stressed that "[a] witness need not physically point out the defendant in the courtroom as long as there is sufficient direct or circumstantial evidence proving that the defendant was the perpetrator." *Id.* at ¶ 19.

{¶ 23} Reviewing the trial testimony, we find that sufficient evidence was presented to establish that appellant was the individual that committed the crimes. First, appellant admitted being at the location though he denied having the air pistol. Thornsberry and Campbell testified regarding their participation in the events which included appellant and two of the officers identified appellant in the courtroom. One officer, Deputy Summers, testified that appellant's nickname was Casper; the name that eyewitness D.H. said belonged to the perpetrator.

{¶ 24} Based on the foregoing, we find that appellant's convictions were supported by sufficient evidence. Appellant's first and second assignments of error are not well-taken.

{¶ 25} On consideration whereof, we find that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Huron County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellant is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.   _____
            JUDGE

Arlene Singer, J.

           _____
Stephen A. Yarbrough, P.J.   JUDGE
CONCUR.

           _____
            JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.